James J. GALLARELLI, Appellant,

v.

UNITED STATES of America.

No. 18507.

United States Court of Appeals, Third Circuit.

Argued Nov. 17, 1970.

Decided April 26, 1971.

Gerald McLaughlin, Circuit Judge, dissented and filed opinion.

Howard Lesnick, Philadelphia, Pa., for appellant.

Roger S. Steffens, Asst. U. S. Atty., Trenton, N. J. (Frederick B. Lacey, U. S. Atty., Newark, N. J., on the brief), for appellee.

Before HASTIE, Chief Judge, and McLAUGHLIN and ADAMS, Circuit Judges.

## OPINION OF THE COURT

HASTIE, Chief Judge.

This is an appeal from the denial, without a hearing, of a motion, brought under section 2255 of title 28, United States Code, to vacate a sentence allegedly imposed in violation of appellant's constitutional rights.

Appellant Gallarelli was sentenced to three years imprisonment upon his plea of guilty to one count of an indictment charging him with conspiracy in violation of section 371 of title 18, United States Code.[1] In his motion to vacate the sentence, he alleged that his Sixth Amendment rights had been violated in that he was not represented by counsel at a critical stage of the proceedings and that he was coerced into pleading guilty by the Assistant United States Attorney, his codefendants and their counsel.[2] We consider only his first contention.

On original arraignment in July, 1967, appellant, then represented by counsel, had pleaded not guilty. On March 4, 1968, the day of the events now in question, he and codefendants appeared in court, he without counsel and

1. The indictment consisted of four counts. The first three charged the substantive crimes of counterfeiting federal reserve notes, transferring counterfeit federal reserve notes and possessing counterfeit federal reserve notes, in violation of 18 U.S.C. §§ 472, 473. Appellant was not named in any of these counts, but was named in count 4, charging conspiracy to violate 18 U.S.C. §§ 471, 472 and 473. Carol Moore, a codefendant, was in a similar situation, being named in the conspiracy count but not in any of the substantive counts.

2. A prior motion for reduction of sentence was denied.

others with counsel. The court then considered a communication from appellant's attorney, a lawyer from another state, stating that he could not appear and would like to withdraw as counsel and suggesting that new counsel be obtained and substituted. Without acting upon this suggestion, the court permitted a recess, apparently for the dual purpose of permitting the defendants to decide whether their not guilty pleas would be withdrawn and guilty pleas entered and of permitting the appellant to decide whether he would request the appointment of new counsel. It also seems to have been contemplated, as in fact occurred, that the prosecutor, the codefendants and their lawyers, and the appellant and his father, as well as Attorney Papier, would participate in a plea discussion. Mr. Papier was the attorney for one codefendant and was available for appointment to represent the appellant if such an appointment should appear necessary when court reconvened.

While Papier was present throughout the ensuing discussion whether the defendants should now change their pleas to guilty, according to the affidavits submitted by appellant with his motion (which the Government accepts as true for the purposes of this appeal) he took no part in the discussions in appellant's behalf. Indeed, he may have thought it improper, as counsel for a codefendant, to urge a course of action upon the appellant, although such scruples did not deter counsel for other defendants whose clients stood to gain from appellant's entering a guilty plea (again, accepting the affidavits as true). He may also have been concerned because, until the defendants returned to the courtroom, appellant did have other retained counsel of record.

Thus, appellant had no legal guidance or advice during the give and take of the plea discussion. On the other hand, appellant, who seems to have been less culpably involved in the alleged wrongdoing than some of his codefendants, was urged during the conference to plead guilty because the prosecutor would not recommend the acceptance of guilty pleas and the dropping of certain other charges against codefendants unless all of those indicted should plead guilty to one charge.

After the parties returned to the courtroom the court appointed Mr. Papier as appellant's counsel. Almost immediately the appellant's plea of not guilty was withdrawn and a plea of guilty was tendered and accepted. The Government contends that this course of events sufficed to fulfill appellant's constitutional right to counsel. We cannot agree.

There is no indication that Papier conferred with his client after his appointment or before. It may be that, in light of his previous association with this case, his silent acquiescence in the bargain indicates that in his view the choice appellant had made was a reasonable one. However, any such conclusion was reached without consultation. And in an adversary system, it is not the role of counsel merely to acquiesce in such a decision made independently by his client; it is the role of counsel to counsel. The appellant seems to have been involved in some way with wrongdoing that resulted in a charge of conspiracy. The extent of the appellant's complicity and the legal consequences thereof under the complex law of conspiracy, the likelihood of conviction, and any professional prediction of probable punishment if conviction should follow a full trial, were among the matters appropriately to be discussed by the accused and his attorney in order that any decision to plead guilty might be intelligently made. Beyond his own belief that he was innocent or guilty, the accused was faced with a choice of alternative courses for which discussion with and guidance by counsel would necessarily have been helpful and illuminating.[3] We have not overlooked the fact that during the plea bargaining appellant's father insisted that his son

3. *Cf.* North Carolina v. Alford, 1970, 400 U.S. 25, 91 S.Ct. 160, 27 L.Ed.2d 162.

not plead guilty until the prosecutor agreed to recommend a sentence less than the maximum. But this assistance cannot be equated with the professional judgment and advice a lawyer could have provided after consultation with his client on the facts and charges confronting him.

In the unusual circumstances of this case the appellant was permitted to fall between two stools. His original counsel was on the way out, but technically still representing him, and prospective new counsel was not yet in, and properly silent, at the time when counseling normally would have occurred. And there was no subsequent counseling during the short interval in open court between the appointment of new counsel and the tender of a guilty plea that might have compensated for the absence of professional advice during the preceding plea bargaining.

The situation here was a very unusual one. It is apparent that the court intended that the accused should have the benefit of counsel in connection with any change in his plea. Yet, we cannot escape the conclusion that the court did not accomplish what it intended. The defendant did not in any meaningful sense have the benefit of counsel at the critical stage of his pleading to the indictment and, therefore, his conviction cannot stand. *Accord*, Lorraine v. Gladden, D.Ore.1966, 261 F.Supp. 909; Anderson v. North Carolina, W.D.N.C. 1963, 221 F.Supp. 930; *see also* Shupe v. Sigler, D.Neb.1964, 230 F.Supp. 601 (alternative holding).

■ Finally, the guidance of counsel is so essential a protection for an accused during plea bargaining and in the making of a decision to plead guilty[4]

that a plea entered without such guidance must be set aside without inquiry whether demonstrable harm resulted in the case in question.

The decision of the district court will be reversed and the cause remanded to permit the appellant to change his plea if he so desires after consultation with counsel.

McLAUGHLIN, Circuit Judge (dissenting).

The sole reason for reversing the decision of the district court is appellant's present allegation that he was not represented by counsel at a critical stage of the proceedings. What actually happened was that appellant's attorney made a motion requesting permission to withdraw from his representation in the case of appellant and a codefendant, Carol Moore. Appellant was present with his father. Defendant Moore was also in court. The attorney did not appear. The judge left the decision whether the lawyer should be allowed to withdraw up to appellant and codefendant Moore; he cautioned the Assistant District Attorney not to have any talk with appellant unless the latter's father was present. He further indicated that if appellant, his father and Miss Moore "decide they want to relieve Mr. Mullen (the attorney) I will consider appointing one of the attorneys sitting in the courtroom this morning to advise them." A lengthy conference was then had, attended by Gallarelli, his father, Helen Koumanelis, a family friend, Carol Moore, the other two codefendants and their counsel. In addition, Philip B. Papier, Jr., an attorney, was present throughout the conference and participated in the discussions held on Gallarelli's behalf.[1] At the conclusion of the recess, and after ap-

4. Recent Supreme Court pronouncements upon the extent to which a guilty plea is binding repeatedly stress the need for counsel and the essential active role of counsel in guiding his client's pleading. *Passim*, Brady v. United States, 1970, 397 U.S. 742, 90 S.Ct. 1463, 25 L.Ed.2d 747; McMann v. Richardson, 1970, 397 U.S. 759, 90 S.Ct. 1441, 25 L.Ed.2d 763;

Parker v. North Carolina, 1970, 397 U.S. 790, 90 S.Ct. 1458, 25 L.Ed.2d 785.

1. Mr. Papier was no stranger to the matter, having represented the fourth codefendant, James Joa. He undoubtedly attended the conference at the request of the judge, without a formal appointment.

pellant and Miss Moore stated that they had no objection to Mullen's withdrawal from the case, Mr. Papier was appointed by the court to represent appellant and Miss Moore. No objection to this appointment was voiced by either defendant.

The discussions held at the lengthy four-hour conference concerned more than the withdrawal of Mullen. In the course of the conference, the Assistant United States Attorney suggested that the problem could be disposed of if each of the defendants would enter a guilty plea to the conspiracy count. The Assistant United States Attorney adhered to his original position that, unless all defendants entered pleas, the other two codefendants would be prosecuted under the entire indictment. In these circumstances, the codefendants standing to lose the most, Hienecke and Johnson, who were indicted on substantive charges, and their counsel, did make some attempt to persuade appellant to enter a plea. However, completely contrary to appellant's assertion here that, absent that pressure, he would have maintained his innocence, this position is not borne out by the sworn statement of appellant's father. He states:

> "In the anteroom the main topic was not the innocence or guilt of the defendants but how much time would be given to the defendants if they plead guilty."

Mr. Gallarelli, although not an attorney, was aware of his son's rights and of the options open to him. On behalf of his son, he, in effect, bargained for a lesser sentence in return for the entry of a guilty plea, convincing the United States Attorney to recommend a three-year sentence rather than the five-year maximum under the statute. In addition, there are indications in the record that disposal of the case against Gallarelli

by plea had been discussed on prior occasions by the Assistant United States Attorney and Mr. Mullen.

The district court found the plea to be voluntary, once upon accepting its tender and a second time in denying the motion to vacate the sentence imposed. Prior to accepting the guilty plea tendered by appellant, the trial judge examined him at length to determine whether the plea was voluntary. Appellant answered in the negative when asked if any influence, duress or coercion had been exercised in conjunction with it.[2]

As was pointed out by the opinion in Brady v. United States, 397 U.S. 749, 90 S.Ct. 1463, 25 L.Ed.2d 747 (1960) there are many reasons why an individual may decide to forego his right to a jury trial and plead guilty to a charge against him. One such cause is the indication that the sentencing judge will consider imposing a sentence less than the statutory maximum if the government is saved the time and expense of trial. This was obviously the situation faced by appellant Gallarelli. His decision to plead guilty was reached only after he obtained reasonable assurance that he would receive a sentence less than the statutory maximum.

Beyond all doubt there was no attempt by the Assistant United States Attorney to assert any undue influence. He did no more than state that he would fully perform his legal obligation, i. e., prosecute all defendants on the indictment returned by the grand jury. While Gallarelli was undoubtedly placed in an uncomfortable position vis-à-vis his codefendants, it was not of such a nature that could be considered coercion. As the court stated in Kent v. United States, 272 F.2d 795 (1 Cir. 1959),

> "We are not prepared to say that it can be coercion to inform a defendant that someone close to him who is guilty

---

2. The rule announced in McCarthy v. United States, 394 U.S. 459, 89 S.Ct. 1166, 22 L.Ed.2d 418 (1969) does not apply to appellant's circumstances. Halliday v. United States, 394 U.S. 831, 89 S.Ct. 1498, 23 L.Ed.2d 16 (1969). My examination of the record convinces me that the district court questioned appellant sufficiently to determine that he understood the nature of the charge against him and was aware of the consequences of his plea.

of a crime will be brought to book if he does not plead. If a defendant elects to sacrifice himself for such motives, that is his choice, and he cannot reverse it after he is dissatisfied with his sentence, or with other subsequent developments. * * * Indeed, a contrary ruling would mean that a defendant could equally say that he pleaded guilty to save himself. It is certainly not duress, if the promise is kept, for the government to say it will recommend a lighter sentence if a defendant pleads than it might recommend if he is convicted after trial. Yet, obviously, 'fear' of the greater sentence may induce a plea. Petitioner must show that he was subjected to threats or promises of illegitimate action. Statements that other guilty parties will be prosecuted if he does not plead are not of that description." 272 F.2d at 798–799.

*See also* Kimbrough v. Beto, 412 F.2d 981 (5 Cir. 1969).

In common fairness I must conclude that appellant was adequately represented by counsel. As stated previously, during the conference held, appellant's interests were protected by his father and by Philip B. Papier, Esq., who participated on his behalf. Mr. Papier was formally appointed as appellant's attorney as soon as his decision to release Mr. Mullen was disclosed to the district judge, and he appeared for appellant when the original plea of not guilty was retracted and the guilty plea entered and at the sentencing on said plea. At no time was there any objection to Papier's appointment or representation. While the record might have been more formally covered by an appointment prior to the conference, there was no prejudice to appellant in the procedure utilized by the district judge and no inherent harm to him can be conscientiously inferred. Papier was familiar with the charges against Gallarelli, having represented one of his codefendants for a period of nearly two years. During the four-hour conference he learned enough about appellant's position to advise him as to the course to follow. The record demonstrates that appellant was not injured in any way by the late formal appointment. United States ex rel. Chambers v. Maroney, 408 F.2d 1186 (3 Cir. 1969), aff'd 399 U.S. 42, 90 S.Ct. 1975, 26 L.Ed.2d 419 (1970).

For the reasons stated herein my judgment is that the decision of the district court should be affirmed.