UNITED STATES of America, Appellee,

v.

MORRISON, Hazel, Appellant.

No. 78-2258.

United States Court of Appeals,
Third Circuit.

Argued Feb. 22, 1979.

Decided May 10, 1979.

Rehearing and Rehearing En Banc
Denied July 10, 1979.

As Amended July 16, 1979.

Salvatore J. Cucinotta (argued), Philadelphia, Pa., for appellant.

William E. Ball (argued), Asst. U. S. Atty., Peter F. Vaira, U. S. Atty., Walter S. Batty, Jr., Bonnie Brigance Leadbetter, Asst. U. S. Attys., Philadelphia, Pa., for appellee.

Before HUNTER and WEIS, Circuit Judges, and MARKEY, Chief Judge, of the Court of Customs and Patent Appeals.*

## OPINION OF THE COURT

JAMES HUNTER, III, Circuit Judge:

On June 28, 1978, the Appellant, Hazel Morrison, was indicted on two counts of illegally distributing heroin in violation of 21 U.S.C. § 841(a)(1) (1976). Prior to trial, she filed a Motion to Dismiss the Indictment with Prejudice, alleging denial of her sixth and fourteenth amendment right to effective assistance of counsel and her fourteenth amendment right to a fair trial. The motion to dismiss was heard in the United States District Court for the Eastern District of Pennsylvania and was denied without opinion. Immediately after the announcement of the district court's decision denying the motion, Morrison entered an open conditional plea of guilty to one count of distribution.[1] She was subsequently sentenced to five years imprisonment, with a special parole term of three years to follow.

The record in this case shows that agents of the Drug Enforcement Agency effected a willful and unjustified interference with Mrs. Morrison's sixth amendment right to counsel.[2] We conclude that both counts of the indictment against Morrison should be dismissed with prejudice.

## I.

On May 31, 1978, Salvatore Cucinotta, Morrison's lawyer, met with Assistant U.S. Attorney Jack Riley and D.E.A. agent Dennis Malloy for the purpose of engaging in pre-trial negotiations. At least from that date, the government knew that Mrs. Morrison was represented by counsel. Subsequently, agent Malloy was contacted by another D.E.A. agent, Stephen Hopson. Hopson was engaged in the investigation of a heroin dealer, and wished to gain Mrs. Morrison's cooperation in that investigation. Malloy was aware that Hopson wanted to negotiate with Mrs. Morrison, and knew that Hopson wished to "solicit her cooperation." Malloy discussed the case against Morrison "generally" with Hopson, and Hopson was allowed to examine the file on defendant's pending trial. Hopson also had "two or three" conversations with Assistant U.S. Attorney Riley in which Morrison's "name came up".

On August 23, 1978, D.E.A. agents Hopson and James Bradley visited defendant's home with neither the knowledge nor the permission of her counsel. At that time Hopson questioned Mrs. Morrison about the source of her heroin during the period prior to her arrest; suggested that she was fac-

---

* Honorable Howard T. Markey, Chief Judge of the United States Court of Customs and Patent Appeals, Washington, D. C., sitting by designation.

1. The guilty plea was contingent upon appeal of the district court's ruling to this Court. We approved the use of the conditional guilty plea in *United States v. Zudick*, 523 F.2d 848 (3d Cir. 1975), and *United States v. Moskow*, 588 F.2d 882 (3d Cir. 1978), and find the appeal to be properly before us now.

2. The district court did not make any findings of fact or draw any conclusions of law when it denied Morrison's motion to dismiss the indict-

ment. On appeal, we are not free to canvass the record and make our own findings of fact. However, accepting all factual statements over which there is no dispute, adopting the pleadings submitted by the government, and taking at face value the testimony of the agents who were the government's witnesses, we still find that a pattern of impermissible conduct emerges. In any event it should be borne in mind that the dispute on appeal does not turn so much on how we characterize the conduct, as on whether we are justified in ordering the relief requested by the defendant.

ing a stiff jail term;[3] observed that he could make recommendations to the U.S. Attorney as to whether she should receive a lenient or heavy sentence; and told her about the government's protection plan for informers. Hopson also questioned Mrs. Morrison about how much money she was to pay Mr. Cucinotta. He then stated that he had seen her counsel's work, and suggested to Mrs. Morrison that she retain a public defender instead. He also urged her to obtain the services of a public defender if she wished to cooperate with the D.E.A. Finally, he suggested that she should think about the quality of the representation that she would receive for the amount of money ($200) that she was paying attorney Cucinotta. Upon departing, he gave defendant his telephone number.

Mrs. Morrison immediately called attorney Cucinotta, who went to her home. While he was there, Morrison called the number she had been given and made plans to meet agent Hopson between noon and 1:00 p. m. of the next day. However, that next day Hopson did not arrive as scheduled, but appeared without warning at about 6:00 p. m. The defendant told him that she had company and couldn't speak, and that in any event she wanted her lawyer present. Hopson departed. One day later Mrs. Morrison received yet another surprise visit from agent Hopson. According to Hopson's testimony he repeated the statements he had made during his first visit.

The government "readily concedes that the agents erred in attempting to elicit the cooperation of Morrison without working through her attorney." On these facts, we are confronted with neither the proverbial constable's blunder, not overzealousness in the pursuit of otherwise legitimate law enforcement ends. Rather, we have a pattern of conduct calculated to intrude upon and destroy the attorney-client relationship.

**3.** Mrs. Morrison testified that the agents warned her that the trial judge in her case was the "worst SOB in the federal courts", that he "hates black people", and that her "goddamn

## II.

The government presents us with two threshold questions which must be answered before we may consider the advisability of granting such extraordinary relief as dismissal of the indictment. First, it contends that we are precluded by *Weatherford v. Bursey*, 429 U.S. 545, 97 S.Ct. 837, 51 L.Ed.2d 30 (1977), from granting any relief at all. Second, it claims that, even if there has been a sixth amendment violation, dismissal of the indictment is not a permissible remedy.

The government reads *Weatherford* as holding that, in the absence of demonstrable prejudice, no sixth amendment violation occurs. We disagree. In *Weatherford*, the Supreme Court was asked to determine whether the presence of an undercover police officer at a strategy meeting between a defendant and his counsel amounted to a constitutional violation. The police officer, when in fact invited by the defendant, attended exclusively for the purpose of preserving his undercover identity and did not relate anything that he had heard during the course of the meeting. The Court of Appeals for the Fourth Circuit concluded that "whenever the prosecution knowingly arranges or permits intrusion into the attorney-client relationship the right to counsel is sufficiently endangered to require reversal and a new trial." *Bursey v. Weatherford*, 528 F.2d 483, 486 (4th Cir. 1975). The Supreme Court reversed, reasoning that not every intrusion into the attorney-client relationship is a violation of the sixth amendment right to counsel, and rejected the Fourth Circuit's *per se* test. The Court's decision was a narrow one. The Court held only that "[t]here being no tainted evidence in this case, no communication of defense strategy to the prosecution, and no purposeful intrusion by Weatherford, there was no violation of the sixth amendment." 429 U.S. at 558, 97 S.Ct. at 845. This holding is not broad enough to

ass [was] going to jail". The agents testified that they did not recall the specifics of this conversation.

support the interpretation that the government urges upon us, namely that mere failure to gain evidence or tactical advantage from an intrusion bars any finding of a sixth amendment violation.

*Weatherford* applies, in the eavesdropping context, when there is *both* no prejudice to defendant's case *and* no wrongly motivated intrusion into the attorney-client relationship. This leaves untouched a vast range of conduct which does constitute a recognizable violation of the right to effective assistance of counsel.[4] In the case of a deliberate attempt actually to sever or otherwise to interfere with the attorney-client relationship, a much more explicitly intrusive offense, the analysis must proceed differently. Here, it is appropriate to consider the purpose and propriety of the agent's conduct and its effect on the defendant's rights and the attorney-client relationship.[5] We had cause to consider this issue in *Via v. Cliff,* 470 F.2d 271 (3d Cir. 1972). There, prison officials were accused of wrongfully preventing an attorney from contacting his prisoner-client during the period immediately before trial. We advanced the test that, "[if] the interference was either wrongly motivated or without adequate justification, [it constitutes] an infringement of [the] constitutional right to counsel." *Id.* at 275.

This test for wrongfully motivated or inadequately justified interference is entirely consistent with the rationale of *Weatherford,* which itself identified purpose as a factor to be considered in the context of challenged eavesdropping. Indeed, since in *Weatherford* the police officer intruded only to the extent that it was necessary to be physically present at defense meetings to preserve his cover, the intrusion was neither wrongly motivated nor without adequate justification, and would have been upheld under the *Via* test.[6] Accordingly, we conclude that *Weatherford* does not bar us from finding a violation on the facts before us.

■ The government next advances the contention that even if we find a sixth amendment violation, we are limited to ordering either suppression of evidence or a new trial. The government argues that since neither of these orders would be appropriate in this case, we are precluded from granting any relief at all. We readily agree that suppression or new trial are frequently appropriate forms of relief for sixth amendment violations. The government has cited a number of our previous decisions wherein such relief was ordered. However, none of those cases even suggests the novel rule that these two forms of relief are exclusive.[7] There is no principle ad-

---

4. Indeed, *Weatherford* is applied narrowly even in the eavesdropping context. In *United States v. Levy,* 577 F.2d 200 (3d Cir. 1978), we found that mere disclosure of attorney-client confidences constituted prejudice under the *Weatherford* test, without regard to whether there was any prejudicial effect on the outcome of the trial.

5. This is exactly what was done in *Gallarelli v. United States,* 441 F.2d 1402, 1405 (3d Cir. 1971). There, we reversed a conviction based on a guilty plea negotiated in the absence of counsel. We held that "a plea entered without such guidance must be set aside without inquiry whether demonstrable harm resulted in the case in question."

6. As the Supreme Court noted in reference to the police officer's justification, "Our cases, however, have recognized the unfortunate necessity of undercover work." 429 U.S. at 557, 97 S.Ct. at 844.

7. Two examples demonstrate the inaptness of the government's authority to the proposition for which it has been cited.

In *United States v. Cobbs,* 481 F.2d 196 (3d Cir.), *cert. denied,* 414 U.S. 980, 94 S.Ct. 298, 38 L.Ed.2d 224 (1973), we held that custodial interrogation in the absence of counsel was permissible if the defendant had freely and intelligently waived his right to have counsel present. Defendant had requested that the evidence gathered from the interrogation be held inadmissible, but we had no need to reach that issue.

In *United States v. Crook,* 502 F.2d 1378 (3d Cir. 1974), *cert. denied,* 419 U.S. 1123, 95 S.Ct. 808, 42 L.Ed.2d 823 (1975), we were confronted with a lower court's suppression of a confession made after a knowing waiver of defendant's *Miranda* rights, where the court found that the police officers knew that defendant was represented by counsel in an unrelated case. Our narrow holding was that the court could not suppress a confession made in full

vanced by the government which would limit our power to dismiss the indictment should such a deterrent appear warranted.

In *Via v. Cliff,* we found that purposeful interference with the attorney-client relationship made out a colorable claim to relief under § 1983. There was no request for relief in the nature of dismissal of an indictment in that case. In *Gallarelli v. United States,* 441 F.2d 1402 (3d Cir. 1971), we found that the guidance of counsel during plea bargaining was so critical that a counsel-less bargain (i. e. one negotiated during a brief period when defendant was "between" attorneys) could not be accepted. There, we vacated the conviction that was based on the guilty plea. The question of whether dismissal was an appropriate remedy never arose. However, in *United States v. Levy,* 577 F.2d 200 (3d Cir. 1978), we found it necessary to dismiss an indictment as the remedy for a sixth amendment violation. In that case a D.E.A. informer sat in on meetings between defendant and his counsel and disclosed the defense strategy to prosecution officers. Because an attempt to assess the prejudice to the defendant would have been speculative at best, we held that the intrusion and mere disclosure, without more, was sufficient to make out a sixth amendment violation. In light of the fact that no other relief would remedy the violation, and considering the extent and seriousness of the improper conduct of the government, we found the only appropriate relief for the violation to be dismissal of the indictment.

### III.

■ The case before us fits this pattern. Under the test in *Via* and *Gallarelli,* the challenged conduct represents not only an "inadequately justified" but a thoroughly unjustified and wrongly motivated interference with the attorney-client relationship, and constitutes a violation of the defendant's sixth amendment right to effective assistance of counsel. As in *Levy* the con-

duct is not amenable to remedy through suppression or reversal of conviction.

What remains for decision is whether dismissal of the indictment is appropriate in the circumstances of this case. The government has conceded that the agents' actions were error, but urges that the admitted error was essentially harmless. The government apparently fails to appreciate the sixth amendment. As the Supreme Court has said, "[R]ight to have the assistance of counsel is too fundamental and absolute to allow courts to indulge in nice calculations as to the amount of prejudice arising from its denial." *Glasser v. United States,* 315 U.S. 60, 76, 62 S.Ct. 457, 467, 86 L.Ed. 680 (1942). In this case, the actual conduct, its motivation, its intended effect, and its pointed intrusiveness are readily apparent. Alone with the defendant, but with the knowledge that she was represented by counsel, the D.E.A. agents attacked the dedication and competence of her lawyer and attempted to raise doubts in her mind about his effectiveness. They represented themselves as having influence with the prosecution as a means of coercing defendant into abandoning her counsel and her defense.

The deliberate undermining of constitutional rights must not be countenanced. This is particularly so when, as here, the matter will come to the attention of the courts only when the importuning of the government agents is unsuccessful. There is, therefore, real danger that the courts themselves may become the unwitting instrumentality through which government agents may interfere with basic constitutional rights.

We have found a deliberate attempt to destroy the attorney-client relationship and to subvert the defendant's right to effective assistance of counsel and a fair trial. Accordingly, the judgment will be reversed, the sentence will be set aside, and the case will be remanded to the district court for the entry of an order dismissing both counts of the indictment with prejudice.

compliance with *Miranda,* because of what it found to be "unethical" police conduct. In the case before us today, we find an actual consti-

tutional violation, and are free to provide an appropriate remedy. *Crook* is silent as to what the contours of that remedy should be.

Before SEITZ, Chief Judge, and ALDISERT, ADAMS, GIBBONS, ROSENN, HUNTER, WEIS, GARTH and HIGGINBOTHAM, Circuit Judges.

## SUR PETITION FOR REHEARING

JAMES HUNTER, III, Circuit Judge.

The petition for rehearing filed by Appellee in the above entitled case having been submitted to the judges who participated in the decision of this court and to all the other available circuit judges of the circuit in regular active service, and no judge who concurred in the decision having asked for rehearing, and a majority of the circuit judges of the circuit in regular active service not having voted for rehearing by the court in banc, the petition for rehearing is denied. A separate opinion Sur Denial of Petition for Rehearing is being filed by Judge Garth, joined in by Judge Adams and Judge Rosenn.

GARTH, Circuit Judge, dissenting from Order denying Petition for Rehearing:

I vote to grant the government's petition for rehearing *in banc*. In my view, the panel opinion, which will now become the law of this circuit, has reached an illogical result—a result which bears no relationship to the evil which the panel has properly condemned. In this case government agents sought to interfere with the relationship between a criminal defendant and her counsel. However, despite an acknowledged absence of prejudice to the defendant, the panel in finding a sixth amendment violation has ordered that the defendant's indictment be dismissed—a sanction without precedent in this or other circuits.

Inasmuch as under this circuit's operating procedures, only a court in banc may override a panel's published opinion (Internal Operating Procedure p. 25), I have voted for the court in banc to reconsider the panel's decision in this case—a decision which I believe to be seriously flawed, in both analysis and result.

## I

Hazel Morrison, the defendant-appellant, was indicted on June 28, 1978 on two counts of illegally distributing heroin in violation of 21 U.S.C. § 841(a)(1). On May 31, 1978, Salvatore Cucinotta, Morrison's attorney, met with an Assistant United States Attorney and with Dennis Malloy, an agent of the Drug Enforcement Agency (D.E.A.), for purposes of engaging in pretrial negotiations. Therefore, at least from May 31, 1978 on, the government knew that Morrison was represented by counsel. On August 23, 1978, D.E.A. agents Stephen Hopson and James Bradley visited Morrison's home without the knowledge or permission of her counsel.[1] According to the panel opinion, at 530,

> Hopson questioned Mrs. Morrison about the source of her heroin during the period prior to her arrest; suggested that she was facing a stiff jail term;[3] observed
>
> [3] Mrs. Morrison testified that the agents warned her that the trial judge in her case was the "worst SOB in the federal courts", that he "hates black people", and that her "goddamn ass [was] going to jail". The agents testified that they did not recall the specifics of this conversation.
>
> that he could make recommendations to the U.S. Attorney as to whether she should receive a lenient or heavy sentence; and told her about the government's protection plan for informers. Hopson also questioned Mrs. Morrison about how much money she was to pay Mr. Cucinotta. He then stated that he had seen her counsel's work, and suggested to Mrs. Morrison that she retain a public defender instead. He also urged her to obtain the services of a public defender if she wished to cooperate with the D.E.A. Finally, he suggested that she should think about the quality of the representation that she would receive for the amount of money ($200) that she was

1. Prior to this visit, Hopson had spoken with Malloy concerning Morrison. Hopson was investigating a heroin dealer, and wished to gain Morrison's cooperation in that investigation. Malloy discussed Morrison's case with Hopson, and Hopson had certain discussions with an Assistant United States Attorney in which Morrison's name was mentioned.

paying attorney Cucinotta. Upon departing, he gave defendant his telephone number.

Undaunted by this encounter, Morrison immediately called her attorney, who came to her home. In Cucinotta's presence, Morrison called the telephone number given her by Hopson. Apparently in at attempt to verify the misconduct of the D.E.A. agents, she made plans to meet Hopson between noon and 1:00 p.m. of the next day. Hopson did not arrive at the scheduled time, however, but came instead at 6:00 p.m. He departed upon being informed by Morrison that she had company and could not speak, and that in any event she wanted her attorney present. The next day, August 25, 1978, Morrison received another visit from Hopson. According to Hopson's testimony he repeated the statements he had made during his first visit.

Prior to trial, Morrison filed a Motion to Dismiss the Indictment with Prejudice, alleging denial of her sixth and fourteenth amendment right to effective assistance of counsel and her fourteenth amendment right to a fair trial. This motion was denied without opinion by the district court. Immediately thereafter, appearing with her same attorney Salvatore Cucinotta, Morrison entered a conditional plea of guilty to one count of distribution. She was sentenced to five years imprisonment, followed by a special parole term of three years. On appeal, a panel of this court reversed the judgment of sentence and remanded to the district court with an order to dismiss the indictment with prejudice because the government had interfered with Morrison's sixth amendment right to counsel!

2. In *Via v. Cliff,* 470 F.2d 271 (3d Cir. 1972), this court held that a prisoner could maintain an action *for damages* under § 1983 against prison officials for interference with the prisoner's right to counsel while he was confined in county prison awaiting trial. The court stated that if the prisoner "can prove that the interference was either wrongfully motivated or without adequate justification and involved the defendant(s), he will have established an infringement of his constitutional right to counsel by

## II

There can be no excuse made for the improper conduct of the D.E.A. agents in this case. Nonetheless, I most strenuously disagree with the analysis and the result of the panel opinion. The logic of the panel opinion will simply not bear scrutiny. Apparently because the panel cannot think of an appropriate sanction to correlate with the nonprejudicial, albeit inexcusable, conduct of the government in this case, it has decided to impose the extreme sanction of dismissing the indictment. The infirmity in the reasoning of the panel opinion is compounded by the result. Dismissal of the indictment despite the absence of any prejudice to the defendant from the misconduct of the government is completely unjustified.

### A

The Supreme Court, in *Weatherford v. Bursey,* 429 U.S. 545, 97 S.Ct. 837, 51 L.Ed.2d 30 (1977), held that not all invasions of the attorney-client relationship by government agents would give rise to a sixth amendment violation. In that case, Bursey, the criminal defendant, sued Weatherford, a government informant, under 42 U.S.C. § 1983, alleging, *inter alia,* that Weatherford had violated Bursey's sixth amendment rights by attending two meetings with Bursey and his attorney. Rejecting the argument that such an intrusion was a per se violation of the sixth amendment, the court reasoned that "[t]here being no tainted evidence in this case, no communication of defense strategy to the prosecution, and no purposeful intrusion by Weatherford, there was no violation of the Sixth Amendment . . .." 429 U.S. at 558, 97 S.Ct. at 845.[2]

the defendant(s)." 470 F.2d at 275. Although the court stated that the prisoner "can maintain this cause of action without alleging or proving prejudice to his defense at trial by the alleged actual infringements," *id.,* it was apparent from the facts that the prison officials had engaged in the sort of purposeful conduct that the Supreme Court suggested in *Weatherford v. Bursey, supra,* would constitute a sixth amendment violation. The court in *Via v. Cliff* expressed no view as to the damages the pris-

The test formulated in *Weatherford v. Bursey, supra,* was applied by this court in *United States v. Levy,* 577 F.2d 200 (3d Cir. 1977). *Levy* involved a direct appeal from a judgment of sentence in which the defendant, Levy, attacked his conviction on the ground that a government informant, posing as a co-defendant, had violated the privileged relationship between Levy and his attorney and had disclosed confidential defense strategy to government personnel. As this court held, prejudice to the defendant would be presumed in such a case:

> Where there is a knowing invasion of the attorney-client relationship and where confidential information is disclosed to the government, we think that there are overwhelming considerations militating against a standard which tests the sixth amendment violation by weighing how prejudicial to the defense the disclosure is.

> .    .    .    .    .

> We think that the inquiry into prejudice must stop at the point where attorney-client confidences are actually disclosed to the government enforcement agencies responsible for investigating and prosecuting the case.

577 F.2d at 208–09.

This holding is fully consistent with *Weatherford v. Bursey, supra,* which indicates that the sixth amendment will be violated whenever there is "communication of defense strategy to the prosecution . . . ." 429 U.S. at 558, 97 S.Ct. at 845.

Concluding that a sixth amendment violation occurred, the *Levy* court determined that dismissal of the indictment was the only appropriate remedy because the information revealed by the government informant had become part of the public domain. 577 F.2d at 210. No contrived safeguards could assure that the information would not

be made use of by the government if a new trial were ordered. *Id.*

Although it is a close question, I will assume that the conduct of the D.E.A. agents was sufficiently "purposeful" in this case to give rise to a sixth amendment violation under the standards established in *Weatherford v. Bursey, supra.* But concluding that a constitutional violation occurred should in no way lead to the panel's holding that the indictment must be dismissed. As the *Levy* opinion indicates, dismissal of the indictment is appropriate when the harm to the defendant cannot effectively be cured by less drastic means. This case, by contrast, does not present a situation where prejudice to the defendant cannot be remedied in alternate ways. Indeed, this case presents a situation where there has been *no showing* whatsoever that the defendant has been prejudiced by the government's misconduct. There is no claim that confidential attorney-client communications were revealed to the government as a result of the conduct of the D.E.A. agents. Nor is there any claim that Morrison's confidence in her attorney was undermined by governmental conduct, or that her guilty plea was induced by it.

Inexplicably, the panel opinion turns the rationale of *Levy* on its head; it reasons that because the defendant was not prejudiced, dismissal of the indictment is the only available remedy.[3] This analysis is fundamentally flawed. As the Government's Petition for Rehearing In Banc acutely points out, " .    .    . the panel's analysis reduces to the following *non sequitur*: Since the [D.E.A.] agents' conduct was reprehensible, the defendant must be granted some relief; and since there was no disclosure to suppress or trial to re-try, dismissal is proper." In addition, the panel opinion works a significant harm to the public interest because it immunizes criminal defendants from

---

oner might recover. *Id.* at 275 n.3. Thus, even if Morrison has established a sixth amendment violation within the standards set forth in *Via v. Cliff,* that opinion cannot be relied upon to support the dismissal of the indictment in this case.

3. The panel's reliance on *Glasser v. United States,* 315 U.S. 60, 62 S.Ct. 457, 86 L.Ed. 680 (1942), is misplaced. In *Glasser,* the court ordered a new trial because of a violation of the defendant's sixth amendment rights. The indictment was not dismissed.

prosecution even though government misconduct has caused them no harm.[4]

Indeed, as a result of the panel's decision, a defendant finding himself in this situation may be better off by alleging no prejudice than by claiming he was harmed by the government's misconduct. In the latter case, he may be granted a new trial or if he has pled guilty, his plea may be vacated. But if he succeeds in proving the absence of prejudice, the indictment, under the panel's opinion, will be dismissed.

## B

Even if the reasoning of the panel opinion were sound, which I do not believe it is, the result requiring dismissal of the indictment is utterly inappropriate in this case. I agree with the analysis of Judge Feinberg in *United States v. Broward,* 594 F.2d 345 (2d Cir. 1979), *cert. denied,* —— U.S. ——, 99 S.Ct. 2882, 61 L.Ed.2d 310 (1979), as to when dismissal of an indictment is an appropriate remedy. In that case, the district court had determined that government officials inserted false materials into an arrest warrant and had lied in court. Consequently, the district court dismissed the indictment. The court of appeals reversed, ruling that "dismissal of the indictment was an inappropriate response." 594 F.2d at 351. Judge Feinberg reasoned as follows:

> In *United States v. Fields,* 592 F.2d 638 (2d Cir. 1978), [*cert. denied,* —— U.S. ——, 99 S.Ct. 2838, 61 L.Ed.2d 284 (1979),] Judge Timbers pointed out for this court that we have upheld the dismissal of an indictment only in very limited and extreme circumstances. In such cases, there was a need either to eliminate prejudice to a defendant in a criminal prosecution, where it was impossible to do so by imposition of lesser sanctions, or to deter a pattern of demonstrated and longstanding widespread or continuous official misconduct.

> .    .    .    .    .

> While these may not be the only conceivable circumstances in which we would uphold a dismissal, .    .    . we emphasize here, as was emphasized in *Fields,* that the sanction is so drastic that, especially where serious criminal conduct is involved, it must be reserved for the truly extreme cases.

594 F.2d at 351. *See United States v. Owen,* 580 F.2d 365 (9th Cir. 1978).

Under the standards set forth in *Broward,* dismissal of the indictment is an obviously improper remedy in this case. There has been no claim made, nor could there be, that Morrison was prejudiced by the government's misconduct, or that this type of misconduct is widespread, routine, constant or continuous. Neither remedial nor deterrence rationales support the extraordinary sanction imposed by the panel. As a consequence, the public is punished for the misconduct of a government agent even though that misconduct did no harm to the defendant.

## III

This is a case in which, conceding the alleged misconduct of the government, the defendant did not sever her relationship with her attorney; the government learned nothing from its interview with her; and her attorney, whom she still retained, did no more than assist her in entering her plea of guilty. Thus, there exists simply no relationship between the sanction imposed and the injury which it redresses.

The government's petition for rehearing which followed the filing of the panel opinion reinforces my view that this case deserves in banc consideration. I therefore

---

4. It is not necessarily the case that the government misconduct must go entirely unremedied in this case. The D.E.A. agents may be subject to departmental disciplinary measures. Moreover, they may be subject to suit in a civil action by Morrison under the rationale of *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics,* 403 U.S. 388, 91

S.Ct. 1999, 29 L.Ed.2d 559 (1971). Of course, such a civil remedy would not preclude suppression in a criminal trial of any information gleaned by the government's violation of a defendant's sixth amendment rights. It is for these reasons as well that I disagree with the rationale of the panel opinion.

vote to grant the petition and I dissent from the court's order which denies it.

Judge ROSENN joins in this dissent.

Judge ADAMS also votes for rehearing *in banc,* because he believes that in view of the position of the Second Circuit in *Broward* the issue in this case is sufficiently important to warrant the attention of the full Court. This would seem particularly so, he observes, since the *Broward* case was not brought to the attention of the panel before its opinion was filed.