# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

STATE OF DELAWARE          )
                          )
        v.                )        I.D. No. 1411017691
                          )
JACQUEZ ROBINSON          )

Submitted: August 21, 2017
Decided: September 19, 2017
Modified: October 17, 2017*

## MEMORANDUM OPINION

*Upon Defendant's Motion to Dismiss Indictment*

## ORDER ADDRESSING STANDARD
## AND SCOPE OF COURT REVIEW

Sean P. Lugg, Esq., Department of Justice, Attorney for the State of Delaware

Patrick J. Collins, Esq., Collins & Associates, Attorney for Jacquez Robinson

**Rocanelli, J.**

*This decision was initially issued under seal. Per the Court's Order dated October 11, 2017, this matter will proceed on the public record. Also, in the meantime, counsel of record for the State has changed.

On March 2, 2015, Defendant Jacquez Robinson ("Robinson") was indicted on the following charges related to two separate incidences: two counts of Murder First Degree, Robbery First Degree, seven counts of Possession of a Firearm During the Commission of a Felony, Conspiracy Second Degree, two counts of Reckless Endangering First Degree, two counts of Assault First Degree, and other related charges. The charges arose from two separate shooting incidents which allegedly took place on November 25 and November 26 in 2014. The November 25 incident allegedly resulted in serious physical injury to two people ("November 25 Assault"). The November 26 incident allegedly resulted in the death of one person ("November 26 Murder"). The charges related to the November 25 Assault were severed from charges related to the November 26 Murder.[1]

Trial on the charges related to the November 26 Murder was scheduled to start on July 11, 2017 ("Murder Case"). On June 12, 2017, the Court issued a protective order in the Murder Case ("Murder Protective Order"). By its terms, the Murder Protective Order expired on July 6, 2017. Trial on the charges related to the November 25 Assaults is not scheduled ("Assault Case").

In addition, Robinson was separately indicted in a multi-defendant case involving alleged gang participation in a gang referenced as the Touch Money Gang

---

[1] The Murder Case is designated as Case No. 1411017691A and the Assault Case is designated as Case No. 1411017691B.

("TMG Case").[2]  On August 24, 2016, the Court issued a Protective Order for the TMG Case ("TMG Protective Order") in advance of an October 2016 trial date.  The October 2016 trial was continued and a new date has not been set.  The TMG Protective Order remains in effect.

Natalie Woloshin is counsel of record for Robinson ("Robinson's Trial Counsel") in the three pending criminal cases, the Murder Case, the Assault Case, and the TMG Case.

According to the State, during trial preparation for the Murder Case, prosecutors Mark Denney and John Downs ("Trial Prosecutors") became concerned that Robinson's Trial Counsel had disclosed witness information ("Protected Witness Information") to Robinson.[3]  The Trial Prosecutors brought their concerns to the attention of New Castle County Chief Prosecutor Joseph Grubb.  An investigation was initiated by the State ("Protective Order Investigation").  Until June 30, 2017, Trial Prosecutors were actively involved in the Protective Order Investigation, including listening to Robinson's phone calls.  In addition, Mr. Grubb assigned Chief Special Investigator John Ciritella to the Protective Order

---

[2] Case No. 1411005401A&B.

[3] The State initially represented that the Trial Prosecutors were concerned that both protective orders had been violated.  However, the State eventually conceded that their concerns related exclusively to the TMG Protective Order.  The Court notes that the Murder Protective Order had not yet been issued as of the date on which the State explains that concerns arose about Robinson's access to Protected Witness Information.

Investigation, and authorized Mr. Ciritella to work with the Department of Correction ("DOC").

The Department of Justice ("DOJ") directed the DOC to conduct a search of Robinson's cell. On June 30, 2017, DOC officials entered Robinson's cell without a warrant and seized Robinson's legal documents.[4] Ciritella examined Robinson's legal documents in a separate room at the prison to determine if the documents contained Protected Witness Information. According to the State, some documents were immediately returned to Robinson while other documents were taken for further review to the DOJ ("DOJ"). At the DOJ, Mr. Ciritella, Mr. Grubb, and paralegal Jamie Prater had access to Robinson's legal documents. Ultimately, the State concluded that none of the legal documents seized contained Protected Witness Information. According to the State, the remainder of Robinson's documents were returned to Robinson on July 7, 2017.

---

[4] There is a dispute regarding what documents were seized. The State asserts that only twelve typed documents and five letters were seized. Robinson asserts that DOC seized 19 large envelopes and 42 letter sized envelopes containing correspondence with Robinson's Trial Counsel, one large envelope labeled "Public Defender + Commissary," one large envelope labeled "Notes" that contained personal notes and questions for Robinson's Trial Counsel, and one large black envelope containing Defendant's notes on his meetings with Robinson's Trial Counsel.

The State contends that Trial Prosecutors were not involved in the search and seizure and did not review any of Robinson's legal documents. However, Jamie Prater has been identified as a member of the prosecution team.

Robinson's Trial Counsel filed a motion to dismiss the indictment ("Motion to Dismiss") on behalf of Robinson on July 7, 2017 contending that the search of Robinson's prison cell and seizure by the State of Robinson's legal documents violated his Sixth Amendment rights. Patrick Collins was appointed as Robinson's counsel for presentation of the Motion to Dismiss ("Robinson's Motion Counsel"). The State opposes Robinson's Motion to Dismiss.

The Motion to Dismiss was originally presented to the Honorable John A. Parkins as the trial judge assigned to the Murder Case. Judge Parkins recused himself from consideration of the Motion to Dismiss, which was assigned to this Judge. The State requested that the Court's proceedings related to the Motion to Dismiss proceed under seal and the Court has honored that request for the time being.

## Discussion

The threshold dispute between the parties is the applicable standard for evaluating a potential Sixth Amendment violation. There are three separate issues that the Court must consider. First, what is the standard for establishing a Sixth Amendment violation? Second, what is the scope of the inquiry for application of

the standard to the facts of this case?  Third, if a violation is established, what is the appropriate remedy?  This decision addresses the first two questions.

## I.   The Standard for Establishing a Sixth Amendment Violation Where the State Has Intruded into the Attorney-Client Relationship

Addressing intrusion by the state into a defendant's attorney-client relationship, the United States Supreme Court concluded in *Weatherford v. Bursey* that there must be prejudice to establish a Sixth Amendment violation.[5]  Applying Weatherford, the Third Circuit adopted a three-prong test.[6]  In addition, in *Levy*, the Third Circuit adopted a presumption of prejudice approach that applies in one limited circumstance.[7]  Moreover, in *Morrison*, the Third Circuit addressed a deliberate interference with the attorney-client relationship.[8]

### A. *Weatherford v. Bursey*

In *Weatherford*, Brett Bursey and Jack Weatherford were arrested after vandalizing a selective service office.[9]  However, Weatherford was an undercover agent who was only arrested to maintain his undercover status.[10]  Believing

---

[5] 429 U.S. 545, 558 (1977).
[6] *United States v. Costanzo*, 740 F.2d 251, 254 (3d Cir. 1981), *cert. denied*, 472 U.S. 1017 (1985).
[7] *United States v. Levy*, 577 F.2d 200, 209-10 (3d Cir. 1978).
[8] *United States v. Morrison*, 602 F.2d 529, 532 (3d Cir. 1979), *rev'd on other grounds United States v. Morrison*, 449 U.S. 361 (1981).
[9] *Weatherford*, 429 U.S. at 547.
[10] *Id.*

Weatherford to be a co-defendant in the ensuing criminal case, Bursey and his counsel invited Weatherford to attend trial preparation meetings.[11] Although Weatherford attended these meetings, he did not share any information learned during the meetings with his superiors or the prosecution team.[12] However, Weatherford did ultimately testify in the case against Bursey, who was convicted.[13]

Bursey brought an action against Weatherford asserting that Weatherford's conduct violated Bursey's Sixth Amendment right to counsel as guaranteed to him by the Fourteenth Amendment.[14] The district court found for Weatherford, but the Fourth Circuit Court of Appeals reversed.[15] The Fourth Circuit stated that the "right to counsel is sufficiently endangered" to warrant a remedy whenever the prosecution knowingly or deliberately intrudes into the attorney-client relationship.[16] Thus, the Fourth Circuit held that Bursey did not need to make a showing of prejudice to support his Sixth Amendment claim.[17]

The United States Supreme Court reversed, holding that there could be no Sixth Amendment violation "unless Weatherford communicated the substance of the

---

[11] *Id.* at 548.
[12] *Id.*
[13] *Id.* at 549.
[14] *Id.* (bringing suit under 42 U.S.C. § 1983 ("Section 1983")).
[15] *Id.*
[16] *Bursey v. Weatherford*, 528 F.2d 483, 486 (4th Cir. 1975), *rev'd* 429 U.S. 545 (1977).
[17] *Id.* at 487.

[attorney-client] conversations and thereby created at least a realistic possibility of injury to Bursey or benefit to the State."[18] In other words, Bursey could not establish that he had suffered a Sixth Amendment violation unless he suffered prejudice as a result of Weatherford's actions.

The *Weatherford* Court then considered what could have constituted prejudice to Bursey, and stated:

> Had Weatherford testified at Bursey's trial as to the conversation between Bursey and [Bursey's lawyer]; had any of the State's evidence originated in these conversations; had those overheard conversations been used in any other way to the substantial detriment of Bursey; or even had the prosecution learned from Weatherford … the details of the [attorney-client] conversations about trial preparations, Bursey would have a much stronger case.[19]

In addition, the *Weatherford* Court considered the fact that there was "no tainted evidence, no communication of defense strategy to the prosecution, and no purposeful intrusion by Weatherford."[20] Ultimately, the *Weatherford* Court concluded that, because Weatherford's conduct caused no prejudice to Bursey, there was no violation of his Sixth Amendment rights.

---

[18] *Weatherford*, 429 U.S. at 558.
[19] *Id.* at 554.
[20] *Id.* at 558.

## B. Third Circuit Application of *Weatherford*

The Third Circuit established in *Costanzo* that there are three branches to the *Weatherford* test.[21] According to the Third Circuit, there is a violation of the Sixth Amendment when the government "intentionally plants an informer in the defense camp;" when an informer discloses confidential defense strategy to the prosecution; or where there is no intentional intrusion or disclosure but a disclosure still prejudices the defendant.[22]

## C. *Levy's* Presumption of Prejudice Approach

Furthermore, the Third Circuit also adopted a presumption of prejudice approach that applies only in one limited circumstance.[23] In *Levy*, the Third Circuit stated that *Weatherford* did not actually adopt an actual prejudice test in all circumstances.[24] In examining the United States Supreme Court's examples of what would have constituted prejudice in *Weatherford*, the Third Circuit reasoned that the "Court was suggesting by negative inference that a sixth amendment violation would be found where, as here, defense strategy was actually disclosed" to the prosecution.[25] In other words, the Third Circuit held that no additional prejudice

---

[21] *Costanzo*, 740 F.2d at 254.
[22] *Id.*
[23] *Levy*, 577 F.2d at 209; *See also Costanzo*, 740 F.2d at 257 (providing that *Levy* did not apply because the circumstances of *Levy* were not present in the case).
[24] *Id.* at 209.
[25] *Id.* at 210.

under *Weatherford* need be found where an actual disclosure has occurred.[26]  Thus, *Levy* holds that "the inquiry into prejudice must stop at the point where attorney-client confidences are actually disclosed to the government enforcement agencies responsible for investigating and prosecuting the case."[27]

### D. Presumption of Prejudice if Defense Strategy Actually Disclosed to the Prosecution or Government Deliberately Interferes with the Attorney-Client Relationship

There has been some confusion over whether *Levy* is still good law following the United States Supreme Court's decision in *Morrison*.  In *Morrison*, two DEA agents approached a defendant to seek her cooperation in an investigation on two occasions after the defendant had been indicted and retained counsel.[28]  The defendant consistently refused to cooperate and did not provide any incriminating information, even after the DEA agents disparaged the defendant's attorney.[29]  The defendant moved to dismiss the indictment on the ground that the DEA agents' actions violated the defendant's Sixth Amendment rights, but did not make any showing of prejudice.[30]  The district court denied the motion and the defendant appealed to the Third Circuit.

---

[26] *Id.*

[27] *Id.* at 209.

[28] *Morrison*, 449 U.S. at 362.

[29] *Id.* at 362-63.

[30] *Id.* at 363.

The Third Circuit concluded that *Weatherford* did not preclude the finding of a Sixth Amendment violation in the circumstances presented because *Weatherford* did not deal with a purposeful attempt to interfere with the attorney-client relationship.[31] Indeed, the Third Circuit found in *Morrison* that there had been a Sixth Amendment violation based on "a deliberate attempt to sever or otherwise to interfere with the attorney-client relationship."[32] In considering the appropriate remedy for the Sixth Amendment violation, the Third Circuit applied *Levy's* remedy analysis and concluded that, as was the case in *Levy*, the violation was "not amenable to remedy through suppression or reversal of conviction."[33] Accordingly, the Third Circuit only relied on *Levy's* remedy analysis in *Morrison*.

The United States Supreme Court reversed, stating that the issue before the Court was "whether [the] extraordinary relief [of dismissal] was appropriate in the absence of some adverse consequence" to the defendant.[34] Thus, the United States Supreme Court assumed that there was a Sixth Amendment violation, and only considered the appropriateness of the remedy as applied by the Third Circuit.[35] The United States Supreme Court ultimately concluded that dismissal of the indictment was inappropriate because the remedy for a violation must be tailored to the injury

---

[31] *Morrison*, 602 F.2d at 532.
[32] *Id.*
[33] *Id.* at 533.
[34] *Morrison*, 449 U.S. at 363-64.
[35] *Id.* at 364.

suffered, and that defendant did not suffer injury sufficient to warrant dismissal of the indictment.[36]

Despite the focus of the United States Supreme Court in *Morrison* solely on the appropriate remedy for a Sixth Amendment violation, the Third Circuit subsequently questioned the continued validity of *Levy's* presumption of prejudice approach. In *Voigt,* the Third Circuit stated in a footnote, "[T]o the extent that *Levy* can be read as holding that certain government conduct is per se prejudicial, we note that the Supreme Court has since held to the contrary."[37] In *Mitan*, the Third Circuit stated that *Levy's* interpretation of *Weatherford* was called into question in *Morrison*.[38] However, the Third Circuit went on to state that it "need not address the question of whether *Morrison* precludes the presumption of prejudice approach adopted in *Levy*" because the facts required to trigger *Levy* were not present.

This Court concludes that *Morrison* should not be read to disrupt *Levy's* presumption of prejudice approach because *Morrison* dealt solely with the appropriate remedy for a Sixth Amendment violation, not the prejudice standard required to establish a Sixth Amendment violation. The Third Circuit did not utilize the presumption of prejudice approach in *Morrison* and the Supreme Court did not comment on that approach. As a result, this Court holds that the prejudice standard

---

[36] *Id.* at 364-65.
[37] *Voigt*, 89 F.3d at 1071 n. 9 (citing *Morrison*, 449 U.S. at 361, 365-66).
[38] *Mitan*, 499 Fed.Appx at 192 n. 6.

11

for establishing a Sixth Amendment violation remains the same as it was before *Morrison*, and includes the presumption of prejudice approach under a limited circumstance involving actual disclosure of defense strategy to the prosecution. Therefore, if Robinson's defense strategy was actually disclosed to the prosecution, prejudice is presumed.

In addition, the Court notes that the United States Supreme Court in *Morrison* did not question the Third Circuit's conclusion that a deliberate attempt to interfere with the attorney-client relationship can result in a Sixth Amendment violation. The United States Supreme Court merely considered the appropriate remedy for that Sixth Amendment violation. Thus, this Court concludes that there may be circumstances falling outside the *Weatherford* framework that allow the Court to find a Sixth Amendment violation based on a deliberate attempt to interfere with the attorney-client relationship.

**E. Burden of Proof in Establishing Prejudice if Defense Strategy was Not Actually Disclosed or There was No Deliberate Interference with the Attorney-Client Relationship**

Just as the United States Supreme Court did not clearly define prejudice in *Weatherford*, the Court also did not explain which party bears the burden of proof in establishing prejudice. In the specific context of *Weatherford*, the Court stated that Bursey did not meet the burden of proof required to make out his Section 1983

12

claim.[39]  Although the Supreme Court did not specify that a defendant would bear the burden of establishing prejudice outside of the Section 1983 context, *Weatherford* suggests that the defendant has the burden of proof.  Moreover, while *Morrison* deals only with the prejudice necessary to obtain a certain remedy, i.e. dismissal, and not the prejudice required to establish a Sixth Amendment violation in the first place, *Morrisson* imposes a burden of proof on the defendant.  The Delaware District Court has followed this approach.  Specifically, in *United States v. Boffa*, the Delaware District Court addressed the burden of proof to establish prejudice and imposed the burden of proving prejudice on the defendant.[40]

Accordingly, this Court finds that it is consistent with decisional precedent to impose the burden of proof on Robinson.[41]  Accordingly, as long as there is no presumption of prejudice because Robinson's defense strategy was actually disclosed to the prosecution, or the Court does not find a Sixth Amendment violation based on a deliberate attempt to interfere with Robinson's attorney-client relationship, then the burden of proof to establish prejudice is on Robinson. If either

---

[39] *Weatherford*, 429 U.S. at 558.

[40] *United States v. Boffa*, 89 F.R.D. 523, 533 (D. Del. 1981) (stating that under *Morrison*, a defendant bears the burden of proving prejudice).

[41] The Delaware Superior Court has also addressed an intrusion by the State into the attorney-client relationship in *State v. Cannon*, ID. No. 1001007728, at 9-13 (Del. Super. Jan. 3, 2011) (TRANSCRIPT).  However, the State in *Cannon* conceded that the defendant's Sixth Amendment rights had been violated by the State's actions and therefore *Cannon* does not provide any guidance on the burden of proof for the prejudice inquiry.

of the requirements for the *Levy* presumption of prejudice approach do not apply, or if the Court concludes there was not a deliberate attempt to interfere with the attorney-client relationship, Robinson may establish prejudice by relying on the three-prong *Weatherford* test, which provides that there is a violation of the Sixth Amendment when the government "plants an informer in the defense camp;" when confidential defense strategy is disclosed to the prosecution; or when there is not an intentional intrusion or disclosure of confidential defense strategy, but a disclosure otherwise causes some prejudice.[42]

## F. Conclusion Regarding Prejudice Standard

Under *Weatherford*, there must be a showing that Robinson suffered prejudice as a result of the warrantless seizure of his legal materials from his cell to establish that there was a Sixth Amendment violation. Prejudice can only be presumed under *Levy* if there was actual disclosure of Robinson's defense strategy to the prosecution team. In addition, the Court may find that there was a Sixth Amendment violation if there was a deliberate attempt to interfere with Robinson's attorney-client relationship. If prejudice is not presumed because there was no actual disclosure of defense strategy, or if there was not a deliberate attempt to interfere with the attorney-client relationship, then Robinson has the burden to establish prejudice.

---

[42] *Costanzo*, 740 F.2d 251 (1984).

## II.    The Scope of Inquiry in the Present Case

Robinson's Motion Counsel must have the opportunity for a meaningful review of the documents seized from Robinson's cell.  As a starting point, the State must respond to Robinson's Motion Counsel's request for production of documents.[43]  Next, the State shall produce any copies of the seized documents that were retained.  To the extent that copies of documents seized were not retained, Robinson's Motion Counsel shall contact Robinson's Trial Counsel to ascertain whether the documents that were seized and returned may be copied for a review by the Court.  Upon *in camera* review, the Court will determine which documents, if any, should be made available to Robinson's Motion Counsel and Mr. Grubb.  Finally, a hearing shall be conducted and the State shall produce witnesses, including Jamie Prater and Mr. Ciritella, as well as any other persons who were involved in the decision to seize legal documents from Robinson's cell and/or who reviewed the seized documents.

---

[43] The Court addressed discovery in its August 21, 2017 office conference. Presumably, all relevant documents have already been produced, including email messages discussing the search and seizure.  If said production has not yet taken place, the State shall produce documents responsive to Motion Counsel's request within five (5) business days of this order.

The Court must make several determinations, including:

(i) Was Robinson's defense strategy actually disclosed to the State?

(ii) Did the State deliberately interfere in the attorney-client relationship?

(iii) What access to Robinson's legal materials did the Trial Prosecutors have before June 30, 2017?

(iv) What steps were taken by the State to establish a screen between the Trial Prosecutors and the Protective Order Investigation?

(v) Were Robinson's Sixth Amendment rights adequately protected by screening the Trial Prosecutors after June 30?

(vi) What access, if any, to Robinson's legal materials did the Trial Prosecutors have after June 30, 2017?

(vii) What legal documents were seized from Robinson's cell and who had access to those documents?

(viii) What is the role of paralegal Jaime Prater on the prosecution team and what is the prejudice, if any, to Robinson of Prater's role on both the investigative team and the prosecution team?

(ix) Should these proceedings be maintained under seal?

NOW, THEREFORE, this 19th day of September 2017, the State shall respond to Robinson's Motion Counsel's request for discovery within 5 business days of this Order and documents shall be provided to the Court for an *in camera* review consistent with this Memorandum Opinion within 10 business days of this Order. Thereafter, a hearing shall take place.

IT IS SO ORDERED.

*Andrea L. Rocanelli*

_____

**The Honorable Andrea L. Rocanelli**