**UNITED STATES of America**
**Appellant in No. 83–5233**

v.

**Anthony J. COSTANZO.**

**Appeal of Anthony J. COSTANZO in**
**Nos. 82–5767, 83–5341/42**

**Nos. 82–5767, 83–5233, 83–5341**
**and 83–5342.**

United States Court of Appeals,
Third Circuit.

Argued Feb. 28, 1984.

Decided July 26, 1984.

As Amended Aug. 6, 1984.

Rehearing and Rehearing In Banc
Denied Aug. 27, 1984.

Ramsey Clark (argued), Lawrence W. Schilling, New York City, for appellant-cross-appellee, Anthony J. Costanzo.

W. Hunt Dumont, U.S. Atty., Samuel Rosenthal (argued), Chief, Appeals Division, Newark, N.J., for appellee-cross-appellant, United States of America.

Before SEITZ and GARTH, Circuit Judges, and DIAMOND, District Judge.*

## OPINION OF THE COURT

SEITZ, Circuit Judge.

█ This case presents an appeal and a cross-appeal from an order of the district court granting petitioner Anthony Costanzo's motion for relief under 28 U.S.C. § 2255. Petitioner moved to dismiss the indictment or in the alternative for a new trial, but the district court granted only a new trial. While the district court did not explicitly refuse to dismiss the indictment, this was the effect of its order and we will so consider it. Petitioner appeals the implied refusal to dismiss the indictment, while the government cross-appeals the grant of a new trial. Both provisions of the order are appealable under section 2255. *See United States v. Allen,* 613 F.2d 1248 (3d Cir.1980).

### I

Petitioner was convicted in 1978 of conspiracy to possess and possession of stolen treasury checks. On petitioner's direct appeal this court affirmed his conviction without an opinion. *United States v. Costan-*

---

* The Honorable Gustave Diamond, United States District Judge for the Western District of Penn-

*zo,* 591 F.2d 1337 (3d Cir.), *cert. denied,* 441 U.S. 961, 99 S.Ct. 2405, 60 L.Ed.2d 1065 (1979). Petitioner subsequently sought relief under section 2255 and Rule 33 of the Federal Rules of Criminal Procedure. The trial judge denied relief without holding a hearing. On appeal this court remanded for an evidentiary hearing on two of the grounds for relief raised by petitioner. *United States v. Costanzo,* 625 F.2d 465, 470 & n. 3 (3d Cir.1980). The first was whether at the time of petitioner's trial an attorney-client relationship existed between petitioner and Frank Paglianite, an informer who provided information about petitioner to the FBI. The second was whether petitioner lacked assistance of counsel at trial because his trial counsel was suspended from the New York bar at the time of the trial. Although not clearly part of the remand, the district court also heard evidence on whether, apart from the existence of an attorney-client relationship, Paglianite's informer status or the disclosures by him violated petitioner's sixth amendment rights.

At the hearing on remand the district court permitted plaintiff to raise two additional grounds for relief: first, that the government failed to make exculpatory evidence available in violation of the Jencks Act, 18 U.S.C. § 3500, and *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963); and second, that petitioner was denied effective assistance of counsel because he was denied a continuance prior to trial. The district court found no basis for relief on either of these grounds, and neither do we.

Addressing the first ground for the remand identified by this court, the district court found that there was no attorney-client relationship between petitioner and Paglianite during the critical phase. The district court also determined that nothing in Paglianite's informer status or the disclosures by him affected petitioner's sixth amendment rights. When it turned to the

sylvania, sitting by designation.

second ground for the remand, however, the district court held that petitioner had lacked "representation in fact" at trial, and that a new trial was the appropriate remedy. These appeals followed.

## II

### A. Attorney-Client Relationship

■ We turn first to petitioner's appeal from the refusal to dismiss the indictment. Petitioner alleges that Frank Paglianite, who until 1982 was a member of the New Jersey bar, was acting as petitioner's attorney while at the same time informing the FBI of the substance of confidential attorney-client conversations. The district court found that an attorney-client relationship had existed between petitioner and Paglianite but that it had ended some time prior to petitioner's trial in January, 1978. Petitioner argues that the district court erred in finding that there was no attorney-client relationship. The district court's conclusion is a finding of fact, reviewable by the clearly erroneous standard.

Petitioner testified that when he learned that he was about to be indicted, he gave Paglianite a check for $10,000 as a retainer for Paglianite's services at trial. A check for $10,000 signed by petitioner and made out to and endorsed by Paglianite was admitted into evidence at the § 2255 hearing. Petitioner also testified that after petitioner's arrest on federal and state charges, Paglianite attempted to enter an appearance in state court on behalf of petitioner and his co-defendants, and that the state trial judge refused to allow the multiple representation. According to petitioner, Paglianite then declined to enter an appearance on behalf of any one defendant in both the state and federal proceedings. Instead, he decided that each defendant would retain his own counsel and that he would work with all the co-defendants. Petitioner further testified that at two group meetings Paglianite discussed trial strategy with all the co-defendants. Finally, both petitioner and his trial counsel testified that on numerous occasions prior to and during petitioner's trial they discussed trial strategy and other matters with Paglianite, with the expectation that Paglianite was assisting with petitioner's defense and that their conversations with him were confidential.

The district judge found that petitioner had not paid Paglianite for legal services for some time prior to the trial. He also found that petitioner's dealings with Paglianite near the trial date were of a business nature, and included an elaborate scheme to defraud Citibank. Finally, he found that Paglianite had never entered an appearance for petitioner at his criminal trial. The district judge presumably declined to credit petitioner's testimony that he believed that Paglianite was assisting him with his defense at trial. Indeed, the trial judge stated that he "could not credit very much of Costanzo's testimony" on whether he had an attorney-client relationship with Paglianite. While the evidence relied on by the district judge is far from overwhelming, we cannot say that his finding that petitioner had no attorney-client relationship with Paglianite at the time of his trial was clearly erroneous.

### B. Did Paglianite's informer status or the disclosures by him violate petitioner's sixth amendment rights?

■ Upholding the district court's conclusion that no attorney-client relationship existed does not end our inquiry. The sixth amendment is also violated when the government (1) intentionally plants an informer in the defense camp; (2) when confidential defense strategy information is disclosed to the prosecution by a government informer; or (3) when there is no intentional intrusion or disclosure of confidential defense strategy, but a disclosure by a government informer leads to prejudice to the defendant. *See, e.g., Weatherford v. Bursey,* 429 U.S. 545, 97 S.Ct. 837, 51 L.Ed.2d 30 (1977). We will review the district court's findings to determine whether the three branches of the *Weatherford* test were correctly applied to the facts of this case.

■ The district court found that no intentional intrusion into the defense camp occurred. Petitioner does not challenge this finding in so many words, but argues that dismissal of the indictment is warranted by the frequency of Paglianite's meetings and telephone conversations with petitioner and his trial counsel, and the frequency of Paglianite's reports to the FBI. We read this argument as an attack on the finding that there was no intentional intrusion by the government.

The district judge noted that Paglianite informed the FBI agents that he was no longer representing petitioner and would not represent him in this case. He also noted that the FBI agents instructed Paglianite not to disclose any defense strategy information and that they periodically consulted with their supervisors to make certain that their use of Paglianite remained within legal limits. In view of these facts the district court's finding that the government did not intentionally invade confidential attorney-client conversations is not clearly erroneous.

■ We next turn to the disclosures made by Paglianite to determine whether the second or third branches of the *Weatherford* test apply. The district court found that four of Paglianite's disclosures were relevant to petitioner's trial, which commenced on January 3, 1978:

(1) On December 2, 1977, Paglianite told an [FBI] agent that one private detective was to "get" another;

(2) On December 22, 1977, Paglianite reported that Costanzo was taping a federal agent;

(3) On December 13, 27 and 29, 1977, Paglianite informed an agent that Costanzo was attempting to bribe him to file a false affidavit; and

(4) In early January 1978 Paglianite informed an agent that Costanzo's lawyer, John Seffern, had been suspended from practicing law in the State of New York.

*United States v. Costanzo,* Slip Op. at 4 (D.N.J. Nov. 17, 1982) (unreported).

The district court found that none of these disclosures "had any impact on the trial, as far as I am able to discern," and that none of them had "impinged on petitioner's sixth amendment rights." We treat this language as a finding that no confidential defense strategy was disclosed, and that the disclosures did not result in prejudice. Petitioner attacks the district court's conclusion. We now consider whether the four disclosures identified by the district court involved confidential defense strategy and, if not, whether petitioner has shown that they led to prejudice. Both determinations are questions of fact which we review under the clearly erroneous standard.

### The December 2 disclosure

Paglianite informed the FBI, according to the FBI's file, that petitioner "is looking for HARRY THE HAT [PURCELL] to 'get' CHARLES COVENEY, Summitt, New Jersey." Coveney was an FBI informant and a friend of FBI agent Jumonville, one of the principal government witnesses at petitioner's trial. Coveney was also acquainted with petitioner, who had once hired Coveney as an investigator. Coveney also knew Paglianite. In fact, petitioner testified that occasionally during telephone discussions of his trial with Paglianite, Coveney would pick up the telephone and join the conversation. He also testified that he believed that throughout the criminal trial Coveney was staying at Paglianite's house.

Petitioner asserts that he wanted Coveney to testify at his trial that Jumonville offered petitioner immunity in exchange for information in aid of another FBI investigation. Petitioner maintains that the December 2 disclosure informed the government of his intent to subpoena Coveney, and that the FBI responded by helping Coveney avoid being subpoenaed. Thus, petitioner argues that the district court erred in not finding a disclosure of confidential defense strategy.

We conclude that the district court's finding that the December 2 disclosure did not involve confidential defense strategy is not

clearly erroneous. The record contained ample evidence supporting the district court's conclusion that the statement about "getting" Coveney did not refer to an attempt to subpoena him as a witness. For example, the FBI agent who took the call from Paglianite testified that he did not believe when he took the call that Paglianite was talking about petitioner's upcoming trial, and did not know at the time that Purcell was an investigator working for petitioner. He also testified that he connected the statement " 'get' Charles Coveney" with threats which, according to Paglianite, were made by petitioner to "do Mr. Coveney in."

The record also shows that while the disclosure occurred on December 2, no subpoena for Coveney was issued until December 16, and Purcell testified that he was not given the subpoena to serve until just prior to the trial. FBI agent Falls testified that he was not aware of an attempt to subpoena Coveney until Coveney told him toward the end of the first week of January. Finally, petitioner's trial counsel testified that it was during the trial that he asked Paglianite for help in locating Coveney so that the subpoena could be served. On the basis of this record evidence we will uphold the district court's finding that Paglianite's December 2 call to the FBI did not disclose confidential defense strategy.

It remains to apply the third branch of the *Weatherford* test to the December 2 disclosure to see whether the disclosure prejudiced petitioner. We believe that the district court's finding that there was no prejudice is supported by the record evidence showing that the FBI did not understand the December 2 disclosure to relate to an attempt to subpoena Coveney, that such an attempt did not occur until January, that petitioner knew of Coveney's whereabouts, and that Paglianite was not informed of the attempt to subpoena Coveney until January. Since the December 2 disclosure was not of confidential defense strategy and did not result in any prejudice, it was not the basis of a sixth amendment violation.

### The December 22 disclosure

The FBI files reveal that on December 22, 1977, Paglianite and Coveney called petitioner, who told them he had taped FBI agent Jumonville, and that Paglianite and Coveney then called FBI agent Falls to pass on the information. Again, the district court found nothing in this disclosure that violated petitioner's sixth amendment rights. Petitioner argues that this disclosure concerned the taping of an April 5, 1976, meeting with FBI agent Jumonville at which petitioner claims he was offered immunity from prosecution in exchange for providing information to the FBI. Petitioner asserts that he had intended to use the tape at trial to impeach Jumonville's testimony that he never offered petitioner immunity, and that the disclosure compromised this confidential defense strategy.

We agree with the district court that the December 22 disclosure to the FBI did not violate petitioner's sixth amendment rights. The information relayed to FBI agent Falls was that petitioner "had tape recorded" meetings with Jumonville. There had been a number of meetings between petitioner and Jumonville, and at least one of the meetings prior to April 5, 1976, had been taped with Jumonville's knowledge. Furthermore, the December 22 disclosure contained no specific reference to the April 5, 1976, meeting, which is the only one petitioner argues is relevant. Nor is there any reference to petitioner's intended use for the tape. Thus, all the information that was contained in the December 22 disclosure—that petitioner "had tape recorded" Jumonville—had been known to the government for a long time. The significance of the April 5 meeting and the use to which the tape recording would be put were not revealed. Under these circumstances the district court's finding that confidential defense strategy was not revealed was not clearly erroneous, and therefore we will uphold it. Turning to the third branch of the *Weatherford* test, we note that petitioner has not argued that actual prejudice resulted from the December 22 disclosure. Petitioner has therefore not

shown the existence of a sixth amendment violation under either the second (disclosure of confidential trial strategy) or third (disclosure resulting in prejudice) branch of the *Weatherford* test.

### The disclosure of petitioner's attempts to bribe Paglianite

The revelation that petitioner offered to bribe Paglianite to file a false affidavit is information involving a prospective crime, and would not be privileged even if an attorney-client relationship existed between petitioner and Paglianite. No sixth amendment violation arose from this disclosure.

### The disclosure of Seffern's suspension

Late on the evening of January 5, 1978, after the third day of petitioner's trial, Paglianite disclosed to FBI agent Falls that John Seffern, petitioner's trial counsel, was suspended from practice in New York. This disclosure does not involve confidential defense strategy, and thus cannot violate the sixth amendment absent a showing of prejudice. Petitioner attacks the quality of Seffern's representation, *see infra* part III, but he does not claim prejudice from the mere disclosure of Seffern's status. It follows that this disclosure did not result in a sixth amendment violation.

Petitioner contends that we must find, based on this court's opinion in *United States v. Levy*, 577 F.2d 200 (3d Cir.1978), that Paglianite's disclosures violated his sixth amendment rights. *Levy* held that prejudice, and thus a violation of the sixth amendment, will be presumed to occur when confidential defense strategy is disclosed to the government by an informer. However, we have upheld the district court's finding that none of Paglianite's disclosures involved petitioner's confidential defense strategy. We therefore conclude that the *Levy* rule does not apply to petitioner's case.

None of the disclosures found by the district court were the product of intentional intrusion into the defense camp, involved confidential defense strategy information, or were accompanied by a showing of prejudice. We therefore hold that the district court correctly refused to dismiss the indictment on the ground that Paglianite's disclosures resulted in a sixth amendment violation.

## III

We turn next to the government's cross-appeal from the order granting petitioner a new trial on the ground that he had no "representation in fact" as a result of his trial counsel's suspension.

The relevant facts are as follows. After Paglianite declined to represent petitioner at his trial, petitioner secured the services of Warren Wilentz. Wilentz withdrew from the case before trial because of a conflict of interest involving a government witness who was a former client. Petitioner, with Paglianite's help, thereafter secured the services of John Seffern. Seffern had at one time been a member of the Wisconsin and New York bars, but he was suspended from practice in the Wisconsin state courts in 1974 for nonpayment of dues and in the New York state courts in 1976 for commingling funds. At the time of petitioner's trial Seffern was a member in good standing of the bars of the United States District Courts for the Southern and Eastern Districts of New York and of the Court of Appeals for the Second Circuit. When petitioner, Paglianite and Seffern discussed whether Seffern would take the case, Seffern told petitioner and Paglianite about his suspension in New York and his being in good standing in the federal courts. Petitioner answered, according to his testimony at the hearing, "Well, if he's okay in federal court, it's okay with me."

It appears that no motion to admit Seffern *pro hac vice* was made at the beginning of petitioner's trial. On the fourth day of trial, the day after Paglianite disclosed Seffern's suspension to the FBI, counsel for the government informed the trial judge of the suspension. At the end of the day, after the jury had gone, the trial judge inquired into Seffern's standing. Seffern informed the judge that he was in good standing in the Wisconsin state

courts, in the Southern and Eastern Districts of New York, and in the United States Court of Appeals for the Second Circuit.[1] The trial judge found on the basis of these bar memberships that Seffern qualified for admission *pro hac vice* under Local Rule 4(C). The district judge who presided over the hearing on petitioner's § 2255 petition concluded that Rule 4(c) did not permit a suspended attorney to serve *pro hac vice* in the district court and that the trial judge should not have admitted Seffern, "with the result that [petitioner] in reality had no representation in fact."

An initial question is the standard of review which we should apply to the district judge's holding that Seffern should not have been admitted *pro hac vice*. Rule 4(C) provides that the decision to admit an attorney *pro hac vice* is committed to the discretion of the trial judge. In this case, however, we are reviewing not a trial judge's decision to admit such counsel, but rather the holding by the district judge at the § 2255 hearing that the trial judge should not have permitted Seffern to try petitioner's case *pro hac vice*. Since we are in the same position as the judge at the § 2255 hearing to apply the standards of Rule 4(C) to the trial judge's decision to admit Seffern, a deferential standard of review is not necessary. Accordingly, our review is plenary.

■ At the time of petitioner's trial Rule 4(C) of the Rules of the United States District Court for the District of New Jersey provided as follows:

Any member in good standing of the bar of any court of the United States, or of the highest court of any state, who is not [a member of the New Jersey bar], may in the discretion of the court, on motion, be permitted to appear and participate in a particular case . . . .

The district judge who presided at the § 2255 hearing interpreted the then-existing rule to prohibit Seffern from being admitted *pro hac vice* at petitioner's criminal trial because he viewed suspension from the bar of a federal court as being the automatic consequence of a state suspension. In other words, he believed that Seffern was automatically suspended from the federal courts in New York when he was suspended from the New York bar, and that the federal courts in New York had simply not yet recognized that fact at the time of petitioner's trial. We believe, on the contrary, that under the plain wording of Rule 4(C) Seffern was eligible for admission *pro hac vice*, and that treating him as constructively suspended in the federal court was not warranted as a matter of law.

Nor can we find another rationale for upholding the district judge's conclusion that petitioner had no "representation in fact." This is not a case involving representation by one without legal training or who was not a member of any bar. Nor is it significant that Seffern does not appear to have been formally admitted *pro hac vice* until the end of the fourth day of trial. As long as one is represented by an attorney who could have been admitted *pro hac vice* at the beginning of the trial, the failure to be formally admitted does not raise sixth amendment concerns. *Derringer v. United States*, 441 F.2d 1140, 1141 (8th Cir.1971); *United States v. Bradford*, 238 F.2d 395, 397 (2d Cir.1956), *cert. denied*, 352 U.S. 1002, 77 S.Ct. 558, 1 L.Ed.2d 546 (1957).

The district judge interpreted Rule 4(C) as then worded as not permitting an attorney suspended in another jurisdiction to be admitted *pro hac vice*. We read the rule otherwise. The plain wording of the rule leaves it a matter for the exercise of discretion by the district judge, and the law does not compel that discretion to be exercised against admission in the event that an attorney is suspended in the courts of his home state. Although the interpretation of

---

1. Seffern was not telling the truth when he told the district judge who presided over petitioner's trial that he was in good standing in Wisconsin. The district judge who presided over the § 2255 hearing placed no reliance on this factor in holding that Seffern should not have been admitted. In the present context we do not consider this factor to be important.

the local rules of a district court by one of its judges is entitled to deference by this court, we cannot agree that the rule as then formulated fairly permitted the interpretation placed on it by the district court.[2]

Petitioner argues that a finding that he had no "representation in fact" is compelled by Judge Adams's dissenting opinion in *United States v. DeFalco*, 644 F.2d 132, 141 (3d Cir.1979) (in banc) (Adams, J., dissenting), to which the district court's attention was called in our prior opinion remanding this case for an evidentiary hearing. In *DeFalco* the court was faced with a situation where counsel for the defendant-appellant had been suspended from the bar of the district court after pleading guilty to a crime. The attorney had plea bargained with the same federal prosecutors whom he was opposing in the appeal to this court.

Judge Adams's position was that DeFalco's attorney was automatically suspended from the bar of the court of appeals when he was suspended in the district court, so that the appellant was without assistance of counsel during his appeal. Other considerations aside, we need not follow the position taken by Judge Adams in his *DeFalco* dissent. While Judge Adams believed that suspension in the court of appeals was automatic after a district court suspension, relying on Fed.R.App.P. 46(a), it is clear from our interpretation of Rule 4(C) that suspension is not automatic under the facts in our case.

Petitioner next argues that he was denied effective assistance of counsel because of Seffern's suspension. Petitioner contends that Seffern was subject to a conflict of interest because if he presented a vigorous defense, there was a possibility that the government would investigate him, discover the suspension, and leave him open to unspecified sanctions. Alternatively, petitioner argues, there was such a possibility of a conflict of interest that representation by Seffern cannot be permitted.

Petitioner points to no specific acts of counsel which prejudiced him at trial. In a conflict of interest situation prejudice will be presumed only if the defendant proves that his counsel "actively represented conflicting interests" and "that an actual conflict of interest adversely affected his lawyer's performance." *Cuyler v. Sullivan*, 446 U.S. 335, 348–50, 100 S.Ct. 1708, 1718–19, 64 L.Ed.2d 333 (1980); *see also Strickland v. Washington*, —— U.S. ——, ——, 104 S.Ct. 2052, 2067, 80 L.Ed.2d 674 (1984). Petitioner falls far short of proving that Seffern was subject to an actual conflict of interest. Since no prejudice has been shown—indeed, in our prior opinion we rejected a claim that Seffern's performance was ineffective—and since we will not presume prejudice absent an actual conflict of interest, we hold that Seffern gave petitioner the "reasonably effective assistance" of counsel required by the sixth amendment. *Strickland*, at ——, 104 S.Ct. at 2064. Because we hold that Seffern's services met the standard required by the sixth amendment, there is no need for us to consider whether petitioner's statement on the fourth day of trial, elicited by the trial judge, that he was satisfied with Seffern's services amounted to a waiver of his sixth amendment right.

## IV

That part of the district court's order refusing to dismiss the indictment against petitioner will be affirmed. That part of the order granting petitioner a new trial will be reversed.

---

**2.** We note that this problem should not occur again because Rule 4 C was recently amended to prohibit the admission *pro hac vice* of an attorney who is under suspension from the bar of any state or federal court.