**UNITED STATES of America**

**v.**

**The LaROUCHE CAMPAIGN, Independent Democrats for LaRouche, Michael Gelber, Richard Sanders, Charles Park, Campaigner Publications, Inc., Caucus Distributors, Inc., Lyndon H. LaRouche, Paul Goldstein, Jeffrey Steinberg, Michelle Steinberg, Robert Greenberg, Edward Spannaus, Roy Frankhauser, a/k/a Bill Clay, Richard Black, John Scialdone, and National Caucus of Labor Committees, Defendants.**

Crim. No. 86–323–K.

United States District Court,
D. Massachusetts.

Aug. 31, 1987.

John Markham, Boston, Mass., Mark D. Rasch, for the U.S.

Michael Reilly, Paul A. Devlin, Haussermann, Davison & Shattuck, Odin Anderson, Robert Rossi, Thomas G. Shapiro, Rikki Klieman, Owen Walker, Federal Defender's Office, Matthew Feinberg, James E. McCall, Boston, Mass., Edward J. McCormick, III, Norfolk, Mass., Daniel S. Alcorn, Arlington, Va., William B. Moffitt, William B. Cummings, Alexandria, Va., John A. Baccari, Wakefield, Mass., Mayer Morganroth, Southfield, Mich., Robert F. Collins, Braintree, Mass., for defendants.

**MEMORANDUM AND ORDER**

KEETON, District Judge.

In response to defense motions concerning the bankruptcy proceeding in the Eastern District of Virginia involving two of the defendants in this case, I issued a Procedural Order on July 13, 1987, allowing an

evidentiary hearing on the following question:

> Was anything that was observed or seized in the bankruptcy action in the Eastern District of Virginia—or were the fruits of anything so observed or seized—communicated to anyone involved in the prosecution of the present case?

In a Memorandum and Order dated July 16, 1987 (see p. 610), I addressed a number of issues related to evidentiary hearings concerning allegations of governmental misconduct and Sixth Amendment violations.

The evidentiary hearing allowed in the Procedural Order of July 13 commenced, by stipulation of the parties, with out-of-court depositions of certain witnesses and was completed with in-court testimony of witnesses on July 30—August 3. On August 14, the parties filed simultaneous submissions concerning the hearing. (Docket Nos. 853, 855, and 874). The allotted time period for responses having elapsed without additional filings from any party, the motions concerning the bankruptcy proceeding are now before the court.

## I.

As a preliminary matter, I note that one aspect of the defendants' bankruptcy motions—the motion seeking an order enjoining the bankruptcy proceeding—was not affected by the evidentiary hearing or addressed in any of the submissions filed in response to the hearing. At previous conferences in this case, I had informed counsel of my tentative view that an order enjoining civil proceedings before another district court in another jurisdiction, if not beyond the jurisdiction of this court, would be at least an inappropriate exercise of my authority. Because defendants have failed to direct me to any authority supporting their contentions that I have such authority and should exercise it in this instance, and for reasons stated below, I now adopt that tentative view as my final ruling on this issue.

In support of the claim of jurisdiction to enter such an injunction, defendants call attention to cases in which "federal district courts have enjoined proceedings in other jurisdictions, including courts of a foreign country ... and other federal courts." Defendants' Memorandum (Docket No. 574) at 2. This phrasing of the argument is, to say the least, misleading in a very material way. A court does not "enjoin proceedings." It enjoins persons or other legal entities, and of course it may, in appropriate circumstances, enjoin them from conducting legal proceedings in another forum. Defendants have, indeed, taken note of this point, *id.* at 2–3, but without facing up to its relevance to the issues presented here.

One reason for the relevance of the point here concerns the identity of the person(s) or entity or entities the defendants ask the court to enjoin. The United States of America is a party to this criminal proceeding as prosecutor. The United States of America is a party to the bankruptcy proceeding in the Eastern District of Virginia in a different capacity. Disregarding the difference between the functions and interests served by these different actions of the United States would be as deep a fallacy as disregarding the difference between a Trust Company serving as trustee under one power of appointment and the same Trust Company serving as trustee under another power of appointment, or an attorney serving as counsel for one client and the same attorney serving as counsel for a different client in a different proceeding. Thus, the cases on which defendants rely are not in point, and at best offer only weak support by analogy for the proposition that a federal court having jurisdiction over a criminal case in one district has jurisdiction to enjoin the United States, or a United States Bankruptcy Judge, or others participating in a bankruptcy matter before that judge, to stay all proceedings in that matter. I conclude that there is no direct support in precedent for the exercise of such jurisdiction, and that it is unlikely that higher courts will recognize such jurisdiction when the issue is squarely presented for decision.

Moreover, even if jurisdiction does exist, I conclude that it would be inappropriate to exercise it in this instance. The bankruptcy proceeding involves not only interests of the United States and some (or perhaps all) of the defendants before this court, but as well many other persons who may have claims as creditors in those proceedings. It is not feasible or sensible to attempt to give them notice and an opportunity to be heard here, and it would be offensive to fundamental principles of adjudication to enter an injunction effecting a stay such as defendants seek without appropriate consideration of their interests.

Finally, defendants have made no showing—nor could they, in circumstances like those of the present case—that such an injunction as they seek is essential to the full protection of all their rights in relation to this criminal prosecution. If any action has been taken or is hereafter taken that prejudices the defendants in any way in relation to this prosecution, this court has ample power to protect their rights by the ultimate sanction of dismissal or a lesser sanction appropriate to an interference that is not of a nature warranting dismissal.

For these reasons, the request that this court stay the bankruptcy proceeding or enjoin the United States from further participation in the bankruptcy proceeding in the Eastern District of Virginia will be denied.

## II.

In their memorandum in response to the evidentiary hearing, the joint defendants (other than Frankhauser) do not take the position that the evidence disclosed during the hearing would alone entitle them either to any relief or to an opportunity to take further evidence. Defendants' Memorandum (Docket No. 853) at 2. Instead, the defendants argue that I should now expand the scope of the hearing to include the question "whether the intrusion into, and disruption of, the defense was intentional." *Id.* at 1–2. Defendants contend that under existing case law, "[i]f the intrusion was intentional then the defendants would be entitled to relief even without proving that

the prosecution utilized the fruits of the intrusion." *Id.* at 2. Defendants seek to examine Assistant United States Attorney John Markham and Department of Justice Trial Attorney Mark Rasch of the prosecution team in this case, Assistant United States Attorney Kent Robinson, FBI Agents Lytle and Klund, and IRS Agent Lucey.

## III.

At the outset, I note that defendants' request for an expanded hearing does not address the issues raised by the Memorandum and Order of July 16. In particular, defendants have failed to respond to the problems identified with respect to judicial inquiries into the motives of attorneys before this court, issues concerning the possible "mixed motives" of government representatives, or the series of questions identified as appropriate for consideration by a trial court presented with a request for an evidentiary hearing. I will nevertheless analyze the defendants' request in accordance with the framework of the July 16 Memorandum.

## IV.

The July 16 Memorandum identified the following questions for consideration by a trial court presented with motions for evidentiary hearings:

First. *Identified Right.* Is the alleged right to be vindicated a legally cognizable right?

Second. *Factually Based Claim of Harm.* Are the allegations before the court supported by a showing of factual circumstances in which there is at least a substantial likelihood that full exploration of the facts will show that the alleged violation of that cognizable right has caused some substantial (or "not insubstantial") impairment of that right? *Cf. Weatherford v. Bursey,* 429 U.S. 545, 551 [97 S.Ct. 837, 841, 51 L.Ed.2d 30] (1977); *U.S. v. Mastroianni,* 749 F.2d 900, 907 (1st Cir.1984).

Third. *Identified Remedy.* Is there a match between the alleged wrong and the proposed remedy? That is, would

any form of relief proposed by the movant(s) be effective to vindicate the cognizable right in the circumstances of the case before the court?

Fourth. *Least Costly of Effective Remedies.* Where more than one form of relief would be effective, should one or more of the proposed forms of relief be rejected because another form of relief would be adequate to protect against impairment of the cognizable right in the circumstances of the case and would be less costly—that is, less harmful or damaging to other legally cognizable rights? *Cf. United States v. Morrison,* 449 U.S. 361, 366 [101 S.Ct. 665, 668, 66 L.Ed.2d 564] (1981).

Fifth. *Entitlement as a Matter of Law.* Is the least costly of the potentially effective remedies justified as a matter of law? If so, that least costly remedy should be granted and there is no need for an evidentiary hearing with all its costs and consequences. If not, the analysis should proceed to the next step.

Sixth. *Objectively Reasonable Basis for Challenged Action Established.* Is the court able to determine on the submissions before it that circumstances existing at the time of the challenged action provided an objectively reasonable basis for the government's taking that action? If so, the court should next consider the eighth question. If not, the seventh question should be considered, to determine whether relief should be granted without reaching the eighth question.

Seventh. *Written Submissions or Evidentiary Hearing Limited to Determining Whether Objectively Reasonable Basis Existed.* (a) After further submissions have been invited by the court and filed by the government, and further defense responses have been invited and filed (unless the court makes the exceptional determination that *in camera* submissions should be received from the government but not submitted to defense counsel), is the court able to determine that the factual circumstances of the case provided an objectively reasonable basis for the government's tak-

ing the action that is challenged by the defendant(s)? If so, the court should next consider the eighth question. If instead the court determines that the circumstances did not provide an objectively reasonable basis for the government action, the least costly remedy should be granted and there is no need for an evidentiary hearing.

(b) If the court is unable to make either of the foregoing determinations on written submissions, an evidentiary hearing of limited scope should be allowed unless the court determines that as a matter of law one answer or the other should be reached because of a legal rule allocating a burden of proof or of production. Until question eight has been addressed, however, the scope of the evidentiary hearing should be limited to evidence bearing upon a fact finding as to whether circumstances providing an objectively reasonable basis for the challenged government action did or did not exist.

Eighth. *Motive or Pretext and the Legal Standard.* Do the applicable precedents (or applicable rules derived from the most apt dicta, analogies, or other sources of authority) allow "pretext" or "mixed motive" inquiries rather than requiring that relief be denied to the defendant(s) because of the existence of an objectively reasonable basis for the government's action? If so, the ninth question must be considered. Otherwise both the defense request for an evidentiary hearing on motive and the defense motion for relief should be denied. *Cf. Scott v. United States,* 436 U.S. 128, 138 [98 S.Ct. 1717, 1723, 56 L.Ed.2d 168] (1978); *United States v. Arra,* 630 F.2d 836, 845 n. 12 (1st Cir.1980).

Ninth. *Limitations on the Scope of Motive Inquiries.* Are other highly valued rights at stake in addition to the cognizable right asserted by the defendant(s) and, if so, is it or is it not appropriate to place some limitations on the scope of an evidentiary hearing into motives—either in relation to the nature of the challenged conduct, the types of agents

whose conduct is challenged, or the sources of evidence (for example, by denying or more sharply limiting inquiries into motives of attorneys of record in the case than of other possible witnesses).

As explained in that Memorandum, it is appropriate to address the questions in the order stated unless an answer to a later step is clear and is dispositive of the motion before the court.

In this case, I have already considered these questions once and concluded that, under the seventh step, an evidentiary hearing was required to determine whether the government's actions in the bankruptcy proceedings—insofar as they were related to the prosecution of this case—were objectively reasonable.

██ Having considered the evidence produced at the evidentiary hearing, I now find that the government had an objectively reasonable basis for initiating bankruptcy proceedings and for conducting the seizures incident to preserving the estates of the bankrupts and protecting the rights of all creditors, including numerous others as well as the United States. In their submissions filed after the evidentiary hearing, as well as those filed before the hearing, defendants have failed to call attention to any ground on which, as fact finder, I should make a different finding.

In view of the finding stated above, I turn next to the eighth step of the inquiry: whether the applicable precedents allow inquiries into governmental motives despite the existence of an objectively reasonable basis for the government's actions.

### V.

Defendants contend that *Weatherford v. Bursey*, 429 U.S. 545, 97 S.Ct. 837, 51 L.Ed. 2d 30 (1977), and certain of its progeny, hold that an intentional intrusion into the defense camp, even if it does not result in prejudice to the defendants, is alone sufficient to constitute a Sixth Amendment violation requiring dismissal of an indictment. The *Weatherford* decision does not directly support defendants' position, however, because the Court explicitly did not address circumstances in which the government's purpose was improper. In *Weatherford*, the Court rejected Bursey's claim, asserted under 42 U.S.C. § 1983, that his Sixth Amendment rights had been violated by the attendance of undercover agent Weatherford at meetings between Bursey and his attorney during the time Bursey was a defendant in a criminal action. The Court held that Bursey could not establish a Sixth Amendment violation because Weatherford had not communicated anything about the defense meetings to anyone and Bursey therefore could not show "at least a realistic possibility of injury to [himself] or benefit to the State." 429 U.S. at 558, 97 S.Ct. at 845.

In holding that Bursey had failed to establish a Sixth Amendment violation, the Court noted that he would have had a much stronger case:

> Had Weatherford testified at Bursey's trial as to the conversation between Bursey and Wise [his attorney]; had any of the State's evidence originated in these conversations; had those overheard conversations been used in any other way to the substantial detriment of Bursey; or even had the prosecution learned from Weatherford, an undercover agent, the details of the Bursey–Wise conversations about trial preparations[.]

*Id.* at 554, 97 S.Ct. at 843. The Court later stated: "Moreover, this is not a situation where the State's purpose was to learn what it could about the defendant's defense plans and the informant was instructed to intrude on the lawyer-client relationship or where the informant has assumed for himself that task and acted accordingly." *Id.* at 557, 97 S.Ct. at 844.

In interpreting the *Weatherford* decision, some lower courts have analyzed the passages cited above and discerned four factors to be considered when assessing a claimed Sixth Amendment violation based on invasion of the defense camp:

> (1) was evidence used at trial produced directly or indirectly by the intrusion; (2) was the intrusion by the government intentional; (3) did the prosecution receive otherwise confidential information about

trial preparations or defense strategy as a result of the intrusion; and (4) were the overheard conversations and other information used in any other way to the substantial detriment of the defendant? *United States v. Kelly,* 790 F.2d 130, 137 (D.C.Cir.1986). Defendants contend that any one of these factors is sufficient to establish a Sixth Amendment violation and that this court therefore must allow an evidentiary hearing to determine if the intrusion by the government was intentional.

There is a split in the circuit courts concerning what combination of the *Weatherford* factors is necessary to establish a Sixth Amendment violation. The Third Circuit has held that a violation can be established by a showing of any one of the four factors, including an intentional intrusion. *United States v. Costanzo,* 740 F.2d 251, 254–55 (3d Cir.1984), *cert. denied,* 472 U.S. 1017, 105 S.Ct. 3477, 87 L.Ed.2d 613 (1985). Defendants also rely on two decisions from the Fourth and Ninth Circuits which, by evaluating the factors seriatim, have implied that each factor is independently sufficient to establish a violation. *Clutchette v. Rushen,* 770 F.2d 1469, 1471–72 (9th Cir.1985), *cert. denied,* 475 U.S. 1088, 106 S.Ct. 1474, 89 L.Ed.2d 729 (1986); *United States v. Brugman,* 655 F.2d 540, 546 (4th Cir.1981). *Cf. United States v. Ginsberg,* 758 F.2d 823, 833 (2nd Cir.1985) (where intrusion is either unintentional or justified, no Sixth Amendment violation without showing of prejudice). In contrast, the Sixth Circuit has held that even where an intentional intrusion is shown, a defendant would not be entitled to any remedy without a showing of prejudice. *United States v. Steele,* 727 F.2d 580 (6th Cir.), *cert. denied,* 467 U.S. 1209, 104 S.Ct. 2396, 81 L.Ed.2d 353 (1984). The Eighth Circuit has also held that a Sixth Amendment Violation requires both a knowing intrusion and prejudice or the threat thereof. *United States v. Singer,* 785 F.2d 228 (8th Cir.), *cert. denied,* — U.S. ——, 107 S.Ct. 273, 93 L.Ed.2d 249 (1986).

In holding that a defendant must show prejudice in order to gain relief, even when the intrusion was intentional, the Sixth Circuit cited *United States v. Morrison,* 449 U.S. 361, 365–66, 101 S.Ct. 665, 668–69, 66 L.Ed.2d 564 (1981). *See United States v. Steele, supra,* at 586. In *Morrison,* the court of appeals had dismissed an indictment, finding that government agents had violated the defendant's Sixth Amendment rights by twice meeting with her without the knowledge or permission of her counsel, disparaging her counsel, and attempting to persuade her to cooperate with them. Although the Supreme Court characterized the agents' conduct as egregious, it reversed the dismissal and held that even if the agents' conduct was assumed to constitute a Sixth Amendment violation, the defendant was not entitled to dismissal because she had not shown that she was prejudiced by the violation. As explained by the Court, "[c]ases involving Sixth Amendment deprivations are subject to the general rule that remedies should be tailored to the injury suffered from the constitutional violation and should not unnecessarily infringe on competing interests" such as society's interest in the administration of criminal justice. 449 U.S. at 364, 101 S.Ct. at 667. As the Court has applied this rule in Sixth Amendment cases, relief is granted only where:

> the constitutional infringement identified has had or threatens some adverse effect upon the effectiveness of counsel's representation or has produced some other prejudice to the defense. Absent such impact on the criminal proceeding, however, there is no basis for imposing a remedy in that proceeding, which can go forward with full recognition of the defendant's right to counsel and to a fair trial.
>
> More particularly, absent demonstrable prejudice, or substantial threat thereof, dismissal of the indictment is plainly inappropriate, even though the violation may have been deliberate.

*Id.* at 365, 101 S.Ct. at 668 (footnote omitted).

■ Thus, under *Morrison,* even if defendants are correct in their contention that any one of the *Weatherford* factors is alone sufficient to establish a Sixth Amendment violation, they would nevertheless not

be entitled to an award of their sole surviving request for relief—dismissal of the indictment—because, after ample opportunity from the evidentiary hearing that has already been allowed, they have failed to proffer any evidence that they have been prejudiced by, or that the prosecution in this case benefited from, the bankruptcy seizure. In these circumstances, I need not decide whether defendants are correct as to the state of the law with respect to what combination of factors constitutes a violation, because granting the defendants' request for an expanded evidentiary hearing into motive would be futile. The request for an expanded evidentiary hearing and the motions to dismiss based on the bankruptcy seizure will therefore be denied.

### ORDER

For the reasons stated in the foregoing Memorandum, it is ORDERED:

The request of the joint defendants (other than Frankhauser) for an expanded evidentiary hearing is denied.

The joint defendants' Motion to Stay Bankruptcy Proceedings or, in the Alternative, to Dismiss (Motion/Docket No. 241/538) is denied.

The joint defendants' Motion to Dismiss for Violation of the Sixth Amendment (Motion/Docket No. 240/537) is denied.

Defendant Paul Goldstein's Motion to Dismiss (Motion/Docket No. 287/757) is denied.

Defendant Paul Goldstein's Motion for an Evidentiary Hearing (Motion/Docket No. 288/760) is allowed to the extent of the evidentiary hearing already allowed. In all other respects, the motion is denied.

Defendant Paul Goldstein's Motion To Be Furnished with Identities of Persons Involved with the Bankruptcy Seizure (Motion/Docket No. 289/761) is allowed to the extent of the evidentiary hearing already allowed. In all other respects, the motion is denied.