UNITED STATES of America

v.

**Stefan A. BRODIE, Donald B. Brodie, James E. Sabzali, Bro–Tech Corp. d/b/a "the Purolite Company"**

No. 00–CR–629.

United States District Court, E.D. Pennsylvania.

Feb. 26, 2002.

Gregory B. Craig, Williams and Connolly, Washington, DC, for Stefan E. Brodie.

Arlin M. Adams, Schnader Harrison Segal & Lewis, Philadelphia, PA, Steven Kimelman, Scott Peeler, Williams Connelly Arent Fox, New York City, for Donald B. Brodie.

Robert E. Welsh, Jr., Catherine M. Recker, Welsh & Recker, Philadelphia, PA, for James E. Sabzali.

Gregory P. Miller, Miller, Alfano & Raspanti, P.C., Philadelphia, PA, Kevin Raphael, Miller Alfano & Raspanit, PC, Philadelphia, PA, for John H. Dolan.

Edward S. G. Dennis, Jr., Morgan, Lewis & Bockius, Philadelphia, PA, for Bro-Tech Corp.

Joseph G. Poluka, U.S. Attorney's Office, Philadelphia, PA, for U.S.

*ORDER AND MEMORANDUM*

McLAUGHLIN, District Judge.

AND NOW, this 14th day of February 2002, upon consideration of Defendants' Motion to Suppress Evidence Related to Alleged Mexican and San Marco Transactions (Docket No. 208), the government's opposition thereto, the testimony and documents introduced into evidence at the hearing held on September 21, 2001, and additional legal memoranda submitted by the parties at the request of the Court, it is hereby ORDERED and DECREED that said motion is DENIED.

The defendants contend that the government violated the defendants' Sixth Amendment right to counsel by "the discovery and use by Special Agent Andrew

McCrossan on September 24, 1999 and thereafter of information concerning Morgan Lewis & Bockius LLP's ('Morgan Lewis') representation of defendant Bro–Tech." Defendants' Memorandum at 2. The defendants contend that all evidence relating to alleged Mexican and San Marco transactions should be suppressed because the government did not investigate the transactions until it learned of the interest of Bro–Tech's counsel in such transactions.

The factual basis for the motion derives from a hearing held on September 21, 2001, as a result of the defendants' motion for an evidentiary hearing concerning governmental misconduct. The Court hereby makes the following findings of fact with respect to Special Agent McCrossan's receipt of information about the activities of Morgan, Lewis & Bockius.

On September 24, 1999, Special Agent McCrossan had a telephone conversation with Joan Graves, a former employee of Bro–Tech Corporation. Ms. Graves was a cooperating government witness. Before September 24, 1999, Special Agent McCrossan had met with Ms. Graves several times in the course of his investigation. Ms. Graves initiated the conversation with Special Agent McCrossan on September 24, 1999. Transcript of Hearing at 16–19.

On that date, Ms. Graves gave Special Agent McCrossan certain information that he recorded in his notes. His notes state:

Graves stated that she met with the girls at Hollahands [sic] for dinner. The girls were saying the talk in the office is about the investigation.

Zina Reyes stated Steve ordered her to call, she sorta knew why. Zina ran to Ronnie's office. Ronnie said it had to do with the Mexican thing Carlos Lugos who runs the Purolite Mexican office.

Ed Dennis sent a Spanish speaking attorney to speak with Lugos out of Philadelphia. Either he went there or Lugos came here. Zina believes it has to do with exports to Cuba.

Also Dennis is preparing letters for Italy. Some problem with the woman in Italy. Not sure what the problem is in Italy. Maria Rose.

*Id.* at 17–18, Government's Exhibit 7.

Ed Dennis is an attorney with Morgan, Lewis & Bockius who represents Bro–Tech Corp. As the notes indicate, Ms. Graves obtained the information with regard to Mr. Dennis' activities from women with whom she used to work at Bro–Tech while having dinner at Houlihan's and "bandying about information, laughing, joking about the investigation." Hearing Transcript at 19. Special Agent McCrossan never asked Ms. Graves or any other witness to try to obtain information about what any lawyers said to employees.

■ The Court denies the motion for a variety of reasons. First, the Sixth Amendment right to counsel does not apply here because the government received this information during the grand jury investigation—before the initiation of formal charges against the defendants. *Moran v. Burbine,* 475 U.S. 412, 430, 106 S.Ct. 1135, 89 L.Ed.2d 410 (1986); *see also In re Grand Jury Subpoena,* 223 F.3d 213, 220 (3d Cir.2000) (citing *In re Special September 1978 Grand Jury (II),* 640 F.2d 49, 57 (7th Cir.1980)) (Sixth Amendment counsel right had not attached at time of grand jury investigation); *U.S. ex rel. Shiflet v. Lane,* 815 F.2d 457, 464–66 (7th Cir.1987) (Sixth Amendment not triggered by government's knowing use of confidential attorney-client communications to obtain a search warrant pre-indictment). These disclosures occurred in September 1999, and the defendants were indicted on October 5, 2000.

*Matteo v. Superintendent, SCI Albion,* 171 F.3d 877 (3d Cir.1999), on which the defendants rely, does not counsel a different result here. In *Matteo,* the Third Circuit held that the defendant's right to counsel had attached when he had been arrested, incarcerated for a week, and preliminarily arraigned. *Id.* at 892–93. The government's informing Bro–Tech's counsel that it intended to seek an indictment of Bro–Tech is not comparable to Mr. Matteo's situation.

■ Although the Sixth Amendment had not attached in September 1999, the defendants were protected by the Due Process Clause of the Fifth Amendment against governmental conduct so egregious as to shock the conscience. *See Moran,* 475 U.S. at 432, 106 S.Ct. 1135. That clause, rather than the Sixth Amendment, appears to be the proper analytical framework in which to examine the agent's conduct in this case. The Court will, nevertheless, evaluate the government's conduct under both the Sixth Amendment and the due process standards.

■ In *United States v. Costanzo,* 740 F.2d 251, 254 (3d Cir.1984), *cert. denied,* 472 U.S. 1017, 105 S.Ct. 3477, 87 L.Ed.2d 613 (1985), the Third Circuit held that the Sixth Amendment is violated "when the government (1) intentionally plants an informer in the defense camp; (2) when confidential defense strategy information is disclosed to the prosecution by a government informer; or (3) when there is no intentional intrusion or disclosure of confidential defense strategy, but a disclosure by a government informer leads to prejudice to the defendant." The defendants argue that the second and third prongs of *Costanzo* were violated.

The government contends that *Costanzo* is not implicated here because that case and the Supreme Court case on which it is based, *Weatherford v. Bursey,* 429 U.S. 545, 97 S.Ct. 837, 51 L.Ed.2d 30 (1977), "concern situations where the government places an informer in situations where the informer meets with a defendant and the defendant's counsel." Government's Letter Brief at 2.

The government's point is well taken. Ms. Graves is not a government informer, and she did not overhear conversations between the defendant and its counsel. She learned certain things about the conduct of defense counsel from secretarial level employees of Bro–Tech who where gossiping at dinner. Ms. Graves then, unsolicited, told the agent what she had heard. The context here is so different from *Weatherford* and *Costanzo* that the principles of those cases are hardly relevant.

The remedy the defendants seek also seems entirely out of proportion to the alleged misconduct. Essentially, the defendants seek to suppress all evidence that the government legitimately collected through the grand jury process because the government was allegedly alerted to investigate sales through Mexico and Italy by defense counsel's interest in those two countries. Even if there were some misconduct here, the Court would not grant the requested remedy.

Putting aside these threshold problems with the defendants' motion, the Court holds that neither the second nor third prong of *Costanzo* is implicated here. As to the second prong, the Court finds as a fact that there was no confidential defense strategy information disclosed here. Ms. Graves told the agent that Bro–Tech's counsel (1) had sent a Spanish-speaking attorney to speak with an employee of Bro–Tech's Mexican affiliate, and (2) was preparing letters for Italy. This is not defense strategy, and it is certainly not confidential. Secretaries know about it

and are gossiping about it in a public place over dinner.

As to the third prong, the Court finds that the defendants have not shown prejudice. The defendants' theory of prejudice is that the government had not investigated sales to Cuba through either Mexico or San Marco until it learned from Graves that counsel was looking into these transactions. First, the second paragraph of the notes—which does not appear to come from counsel—alerted the government to Mexico, assuming that it was not already pursuing this line of inquiry. Second, the defendants have not shown that the government did not know about possible sales through Mexico and Italy prior to the conversation with Ms. Graves.

Defense counsel's cross-examination of the agent on this point consisted of establishing that certain aspects of his investigation into sales through Mexico came after September 24, 1999. The Court makes two observations about this testimony. One, the fact that the agent did some investigation after September 24 does not prove that he had not intended to pursue this line of inquiry prior to September 24, or learned about it independently of the discussion with Ms. Graves. For instance, Agent McCrossan indicated that he received the telephone list that contained the name of Mr. Lugo Lopez[1] from two or three witnesses. Hearing Transcript at 64. There was no cross-examination on this issue. Two, the fact that he did some investigation of Mexico after September 24 does not prove that he did not do some before September 24. There was no questioning of the agent on this point either. Finally, with respect to San Marco, there was little cross-examination on this issue.

The preceding discussion of the alleged Sixth Amendment violation is applicable to the due process analysis. There was no conduct here that even approaches a due process violation.

---

1. This is the correct name for "Carlos Lugos," which Agent McCrossan had apparently misspelled in his notes. Hearing Transcript at 58, 60.